## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **JOE SOLO, *et al.*,** <br><br>                **Plaintiffs,** <br><br>       **v.** <br><br> **CHIQUITA BRANDS INTERNATIONAL, INC., *et al.*,** <br><br>                **Defendants.** | ) <br> ) <br> ) <br> ) <br> )   **CIVIL ACTION 05-61335-CIV** <br> )   **JORDAN/TORRES** <br> ) <br> ) <br> ) <br> ) |

## Opposition to Owen F. Silvious' Motion
## to Proceed In Forma Pauperis

The Plaintiffs, Joe Solo, Tim McGraw, Jeannie Staman, and Dennis Coughlin (the "Plaintiffs"), by their Court approved class counsel, object to the motion of Owen F. Silvious ("Silvious") to proceed in forma pauperis in Appeal No. 07-15894-D, pending in the United States Court of Appeals for the Eleventh Circuit. Silvious opted out of the class and is not even part of the class settlement to which he now purports to object. Thus, Silvious lacks any standing (or need) to appeal this Court's approval of the class settlement. Silvious' in forma pauperis motion is deficient; his planned appeal is frivolous and without merit as a matter of law, and his appeal is not filed in "good faith," as evidenced by Silvious' contemporaneous and self-serving settlement demands. *See* Fed. R. App. P. 24(a)(3) and 28 U.S.C. § 1915(a)(3). There is ample authority for this Court to deny Silvious' motion.

## STATEMENT OF FACTS

1.      On July 24, 2007, the Court entered an Order preliminarily approving the settlement of this action with the settlement class defined in paragraph two of the Order.  The settlement class included persons and entities that purchased bananas in 46 states and the District of Columbia, all of which may have in some form or other recognized the potential for "indirect" purchaser claims by ultimate consumers and others.  The named Plaintiffs are residents of California, Kansas, Nebraska, and Tennessee, four of the 46 states included in the settlement class. The Court set the matter for a fairness hearing on November 16, 2007.  [D.E. 96]

2.      Plaintiffs, pursuant to the July 24 Order, notified the class of the settlement, including the time for filing objections or opting out of the class.  According to the class notice, a notice of opt-out or objection had to be received by September 14, 2007.  *See* D.E. 96, at ¶ 4 (approving form of notice to the class).

3.      The parties, as required by the "Class Action Fairness Act," ("CAFA") 28 U.S.C. § 1715, notified the attorneys general of each of the 46 states included in the class and the Attorney General of the United States of the proposed settlement agreement.  None of them objected to the settlement, as they were obligated to do by CAFA, if they had concerns for their respective citizens.

4.      Owen F. Silvious, an inmate at the federal correction facility in Butner, North Carolina, sent a "notice" dated August 15, 2007, to the Clerk of the Court for the Southern District of Florida, opting-out of the settlement on "behalf of himself" and purporting to opt out

2

on behalf of "other individuals in the states of Virginia, West Virginia and North Carolina." Exhibit 1, at 3-4 (Silvious' opening brief in Appeal No. 07-15894-D). [1]

5.     On August 31, 2007, the Court entered an Order directing the clerk to file Silvious' notice.  The Court further stated in the Order that "Mr. Silvious … is advised that he cannot opt-out on behalf of any other individuals in the states of Virginia, West Virginia, and North Carolina.  He may only opt out on his own behalf."  [D.E. 98]  No Silvioous did not request reconsideration or appeal was made by Silvious to that Order.

6.     Silvious claims, without any docket entry or other evidentiary support, that he sent to the Clerk of the Court for the Southern District of Florida, a September 11, 2007 letter "canceling" his earlier opt-out notice.  Exhibit 1, at 3-2.  Significantly, on September 19. 2007, Silvious filed a "Motion for Court to Disapprove Settlement Agreement as to Certain Class States Mentioned in Settlement Agreement," [D.E. 101], referring specifically to his August 15, 2007 opt-out notice and the Court's August 31, 2007 Order, but — notably —*no where* referring to his now claimed "cancellation" of his opt-out notice. [2]

7.     Contemporaneously, on September 25, 2007, Silvious sent a letter to counsel for the three Defendants threatening to file a class action on behalf of indirect purchasers in Virginia or West Virginia.  [D.E. 104, ex. 1, 2, 3]  Silvious closed his letter as follows:

> However, if you want to settle this matter without further court actions, I will agree to settle the matter if each of the named defendants will donate $100,000.00 to American Helping Hand Foundation through its Agent and mailed to the Agent to help

---

[1]     Silvious served his brief in the Eleventh Circuit on February 8, 2008.  At that time, he had not paid the required filing fee of $455 and this Court has not granted any motion to proceed in forma pauperis.

[2]     Silvious' September 11 letter was not sent to counsel of record and does not appear on the docket sheet for this action.

indigent persons, elderly persona (*sic*) and homeless persons.  that
(*sic*) would be a total of $600,000.00 and would be tax deductible.

Defendants immediately notified the Court of this apparently self-serving settlement demand,

filing a copy with the Court on October 11, 2007. [3]

      8.     On November 9, 2007, pursuant to the Court's July 20, 2007, Order, the Plaintiffs

filed a "List of Objectors and Opt-outs," identifying Silvious as an opt-out but also noting for the

Court the objections he had made to the settlement. [D.E. 113].

      9.     The Court held a fairness hearing on November 16, 2007.  At the hearing, counsel

for both the Plaintiffs and the Defendants identified Silvious as an opt-out, noting that he did also

state an objection.  *See, e.g.*, Exhibit 2, at 16-20 (transcript of the fairness hearing).

      10.    On November 21, 2007, the Court entered an Order approving the class

settlement.  The Court also found that Silvious was an opt-out.  [D.E. 119, at ¶ 12]

      11.    On November 28, 2007, Silvious sent another self-serving settlement demand

letter, this time to all defense and class counsel, threatening to appeal the Court's November 21

Order approving the settlement, unless payments by each of "Twenty Thousand Dollars

[$160,000]" were made to a designee of Silvious' choice.

> Because the appeal will cause all of you to expend additional fees
> and expenses, I am will tosettle (*sic*) this matter and withdraw the
> appeal once it is filed in exchange that each of the listed andm (sic)
> named attorneys and law firms pay Twenty Thousand Dollars
> [$160,000] tax free to an organization or person designated by me
> that will be used mostly to help indigent persons, elderly persons
> and homeless persons.  I am even considering filing an action
> under the RICO Act against all the attorneys because of the
> massive fraud and misrepresentation ....

Exhibit 3, at 2 (Letter to Susan L. Dolan from Owen F. Silvious, dated November 28, 2007).

---

[3]     The parties have not been able to identify this organization, and internet searches for any mention of this entity have been unsuccessful.

12.     Silvious served his notice of appeal of the Court's November 21 Order on or about December 10, 2007, but he did not pay the docket and filing fee of $455. [D.E. 121] On January 16, 2008, the Court of Appeals issued a DIS-1 (Dismissal notice, 14 days to correct default).

13.     On January 11, 2008, Silvious sent to the Clerk of the Court for the Southern District of Florida, a letter enclosing four documents: (i) Application to Proceed Without Payment of Fees and Affidavit; (ii) Consent to Collection of Fees from Trust Account; (iii) Prisoner Trust Account Report; and (iv) Draft of Proposed Order for Judge to sign. Silvious asked the Clerk to place these documents under seal, which the Clerk did. [D.E. 127; *see also* D.E. 124]

14.     The Court entered an Order on February 4, 2008, instructing the Clerk of the Court to unseal Silvious' filing of January 11, 2008. [D.E. 126]

15.     Silvious' Consent to Collection of Fees from Trust Account, dated January 10, 2008, indicates that he is already involved in, and owes funds for another civil litigation in the United States District Court for the Northern District of West Virginia. [D.E. 127*, see also* D.E. 124] [4]

16.     On February 21, 2008, Silvious sent a third self-serving settlement demand threatening to file a brief in the United States Court of Appeals for the Eleventh Circuit within the next thirty to forty days, stating that he would be "willing to settle for the statutory damages stated in [his] brief," and threatening litigation against counsel for "gross misrepresentations and

---

[4]     The United States District Court for the Northern District of West Virginia is currently deducting funds from Silvious' account for payment of filing fees in the matter *Silvious v. Midland Credit Management, Inc., et. al.*, Case No. 5:07-cv-00145. Silvious has filed suit against numerous debt collection agencies for violations of the Fair Debt Collection Practices Act.

fraud upon more than 100 million persons".  Exhibit 4 (Letter to Stuart Singer and Paul Kunz from Owen Silvious dated February 21, 2008).

## ARGUMENT

### 1.    The Court Should Deny the Motion Because Silvious Lacks Standing

Silvious' motion to proceed in forma pauperis and without prepayment of fees should be denied because Silvious has opted out of the settlement and, therefore, has no standing to appeal this Court's decision.  Individuals who elect to opt out of a class action settlement are no longer parties to the settlement.

An individual who chooses to exclude himself from a class action settlement loses standing to object to, or maintain an appeal of the approval of that settlement.  *See In re Brand Name Prescription Drugs Antitrust Litig.*, 115 F.3d 456, 457 (7th Cir. 1997) ("Having opted out of the class action, [opt outs] were no longer members of the class and so in no sense were parties.  A nonparty has no right to appeal."); s*ee also In re Vitamins Antitrust Class Actions*, 215 F.3d 26 (D.C. Cir. 2000) (holding opt out plaintiffs not entitled to challenge class settlement), *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1103 (10th Cir. 2001) (holding that "…[a]ppellants who opted out of the settlement lack standing to appeal").

Silvious opted out of this settlement in a letter dated August 15, 2007.  [Ex. 1, at 3-4]. The Court acknowledged the opt out notice and filed it on behalf of Silvious on August 31, 2007. [D.E. 98].  Moreover, the Court listed Silvious as an opt out in its Final Approval of the settlement on November 21, 2007.  [D.E. 119, at 4-5].  Silvious' desire to opt out of the class settlement is clear from the record.  In his capacity as an opt out, he cannot even claim to be injured by the settlement approval because he is not prejudiced by the Court's action.  Having chosen to exclude himself from the settlement, Silvious lost any standing to maintain this appeal.

Silvious claims that he sent a letter "canceling" his opt out notice on September 11, 2007. [Ex. 1, at 3-2]. There is no evidence of any such claimed cancellation. Indeed, the evidence is inconsistent with Silvious' assertion. No such letter was docketed by the Court; no such letter was received by any of the parties, despite Silvious having sent other communications to the parties. Silvious did not file any motion or paper asking the Court to rehear its August 31, 2007 Order designating him as an opt out. The Court properly and rightfully designated Silvious as an opt out in its Order approving the settlement.

### 2.   The Court Can Deny Silvious' Motion if the Appeal is not in Good Faith or is Frivolous

Even if treated as an objector, Silvious' motion to proceed in forma pauperis was not filed in good faith, and is a frivolous attack on the settlement between the class of indirect purchasers and the Defendants in this case. "An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C. § 1915(a)(3). This same requirement is embodied in Fed. R. App. P. 24(a)(3), which states that a district court may deny a motion to proceed in forma pauperis if it "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis..."[5]

The Prison Litigation Reform Act ("PLRA") of 1995, Pub. L. No. 104-134, added language to 28 U.S.C. §1915, stating "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that … the action or appeal is frivolous or malicious." 28 U.S.C. § 1915(e)(2). *Childs v. Ortiz*, 2007 WL 4455759 (10th Cir. 2007) (PLRA provisions in 28 U.S.C. § 1915 were enacted to "reduce

---

[5]   This section of Rule 24 deals with appellants who had prior approval in the District Court trial to proceed in forma pauperis. It is, however, in accord with the principles stated throughout the rule. *See, e.g.*, Fed. R. App. P. 24(a)(4).

frivolous prisoner litigation."). Silvious' attempted appeal falls into the category of frivolous litigation that the PLRA was specifically designed to prevent.

Even if the Court finds Silvious' allegations of poverty to be true, it should deny his in forma pauperis application based on the frivolous and bad faith nature of his appeal. Silvious has demonstrated his lack of good faith from his first filing. At the time he objected to the certification of this settlement class, he sent an extortion letter to counsel for the Defendants, ransoming the settlement approval in exchange for a donation ($600,000) to an organization that does not appear to exist. (Facts ¶ 7) Then in his notice of "intent" to appeal, he accused counsel of fraud and misrepresentation, but also offered to drop his appeal for $160,000 stating "my appeal that will cause a delay in the action …." (Exhibit 3) Most recently, Silvious wrote counsel on February 21, 2008, threatening to file a brief in the United States Court of Appeals for the Eleventh Circuit within the next thirty to forty days; stating that he would be "willing to settle for the statutory damages stated in [his] brief," which he claims amount to seven thousand dollars; and threatening litigation against counsel for "gross misrepresentations and fraud upon more than 100 million persons" if his demands are not met. (Exhibit 4) In his attempt to further delay the settlement, Silvious did not serve the instant motion on counsel and asked that his motion be filed under seal, without submitting any motion requesting permission to file under seal and without stating any justification for his request. *See* Local Rule 5.4.

As an opt-out, Silvious is in no way prejudiced by the Order Approving Final Judgment. [D.E. 119] His appeal is no more than an attempt to use frivolous grounds to hold up an arms' length negotiated and unobjectionable class settlement on behalf of indirect banana purchasers unless a personal benefit is conveyed upon him. The terms of the settlement were published in *USA Today*, circulated in all fifty states, and read by millions of subscribers. Additionally, in

accord with the Class Action Fairness Act, counsel notified the United States Attorney General and the Attorney Generals of all 46 states of the settlement and its terms.  (Facts ¶¶ 2-3)  The Court received only *two* responses to the Notices of Settlement in addition to Silvious' initial opt-out.  (Facts ¶ 10-12)  Silvious' filing cited no case law in support of his stated complaints about the scope of the settlement.  Silvious did, however, tell counsel in this case — privately — that the only way to avoid his bad faith interference was to pay his desired "charity" immediately.

Silvious' attempt to delay this class-wide settlement, his attempts to extort funds from the Defendants and now class counsel, and his deceptive filing methods all underscore the bad faith behind this appeal.  Additionally, as demonstrated below, Silvious' "objection" is frivolous as a matter of established class action law and policy as reflected in the Class Action Fairness Act. When an appeal is "frivolous and malicious" on its face, a court can (and should) dismiss an in forma pauperis application, regardless of its conclusions about the allegations of an applicants poverty.  28 U.S.C. § 1915(e)(2).

### 3.    The Court Should Deny the Motion Because it is Procedurally Deficient

Further evidencing the bad faith motivating his frivolous appeal, Silvious' motion, dated January 11, 2008, fails to answer properly many of the questions required on the "Application to Proceed Without Prepayment of Fees and Affidavit."   This Court may authorize the commencement of an appeal "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses…Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress."  28 U.S.C. § 1915(a); *see also* Fed. R. App. P. 24(a)(1), requiring appellants to file an affidavit in the district court stating inability to give security for fees and costs, claiming an entitlement to redress, and stating the issues the party plans to present upon appeal.  The Court's form additionally notes, "[a] Prisoner

seeking to proceed IFP shall *submit an affidavit* stating all assets.  In addition, a prisoner must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts."  [D.E. 127 (emphasis added)]

Silvious did not attach the affidavit required by 28 U.S.C. § 1915, Rule 24 and the face of the application.  He does not provide a statement of all assets in his possession, a statement of the nature of his appeal, or his belief that he is entitled to redress.  Moreover, his motion is deficient in that his answers do not describe the nature of his employment in prison and the source of his income.  For instance, Silvious does did not answer the required questions, "[a]re you employed at this institution?" and "[d]o you receive any payments from them?"  [D.E. 127]  He also does not answer the question requiring him to identify his last employer, salary, or wages.[6]

The missing information is relevant to determining Silvious' ability to proceed in forma pauperis.  Absent this information, the Court can (and should) deny the motion.

### 4.    The Court Properly Certified the Settlement Class because the Class Meets the Criteria for Statutory and Article III Standing

Silvious' "objection" to the November 21, 2007 Order is that the Court erred in approving the settlement of the claims of indirect purchasers in 46 states and the District of Columbia because the named plaintiffs resided in only four of the states.  Stated another way, he argues that the Court can approve a *settlement class* only as to those states for which the plaintiffs have named class representatives.

Silvious' argument ignores the importance of the Class Action Fairness Act, upon which this Court's jurisdiction is premised in the first place.  [D.E. 38, at ¶ 3 (Consolidated Amended

---

[6]     The precise language of question 3(b) is "If the answer is 'No,' state the date of your last employment, the amount of your take-home salary or wages and pay period and the name and address of your last employer."  Silvious answered "N/A."  [D.E. 127]

Class Action Complaint)]  Here, the Plaintiffs have statutory standing under Fed. R. Civ. P. 23, and they also have Article III standing — injury in fact — sufficient to represent a class of all similarly situated persons, *i.e.* consumers in the 46 states that allow some form of indirect, consumer antitrust claims.  Thus, the Court did not err in approving the settlement class.

The Class Action Fairness Act of 2005 amended 28 U.S.C. § 1332 to add a new section (d).  This section provides that this Court has jurisdiction over class actions when "any member of a class of plaintiffs is a citizen of a State different from any defendant" and the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.  In passing CAFA, "Congress … envisioned that such claims — involving thousands of plaintiffs from many states — would now be litigated in a single forum."  *In re OSB Antitrust Litig.,* 2007 WL 2253425 at *13 (E.D. Pa. 2007).

The legislative history supports the notion that the Act was designed to allow nationwide resolution of otherwise individual state class actions.

> Just as a matter of public policy, wouldn't it be better that class action] cases be settled and handled in a Federal court, where the U.S. Supreme Court may ultimately decide an issue, as opposed to the plaintiffs being able to search 50 states and then finding the most favorable law and then find the county or circuit within that State that would be most favorable to their lawsuit and filing it there?

The Class Action Fairness Act of 1999: Hearings before the S. Comm. on the Judiciary, Subcomm. on Administrative Oversight and the Courts, 106th Cong. 44 (1999) (remarks of Sen. Jeff Sessions); *see also* S. Rep. No. 109-14, at 5 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 6 ("Because interstate class actions typically involve more people, more money, and more interstate commerce ramifications than any other type of lawsuit, the Committee firmly believes that such cases properly belong in federal court."); S. Rep. 109-14, at *57 (2005) ("Article III of

the Constitution ensures that there will be a fair, uniform, and efficient forum (a federal court) for adjudicating interstate commercial disputes, so as to nurture interstate commerce.")

To this end, CAFA added "notice requirements" to class action settlements. Thus, CAFA, codified at 28 U.S.C. § 1715, requires that each defendant participating in a proposed settlement notify the Attorney General of the United States, as well as the "appropriate state official" in every state in which a class member resides — not just the named class members — of details of the class action and the proposed settlement. *See* 28 U.S.C. § 1715(b)(1)-(7). The officials then have at least 90 days to decide whether they wish to take any action regarding the settlement. 28 U.S.C. § 1715(d). In this action, the Defendants sent the notices to the appropriate officials and no official objected to the proposed settlement. [D.E. 119]

Even before passage of CAFA, the Supreme Court held that, in considering whether to approve a Rule 23 settlement class, the trial court should consider class certification *before* Article III standing. In *Ortiz v. Fibreboard Corp.,* 527 U.S. 815 (1999), the Supreme Court was confronted with the question of whether "global settlement" class could be certified where some putative class members suffered no injury. Fibreboard — an asbestos manufacturer — and thousands of individual plaintiffs sought certification of a nationwide settlement class of persons who were injured from Fibreboard asbestos related products, as well as persons who had only been exposed to such asbestos-tainted products, but had yet to develop any symptoms or illnesses associated with such exposure. The district court certified the proposed settlement class and the Fifth Circuit affirmed.

The Supreme Court found that "exposure-only" settlement class members were "without injury in fact and hence without standing to sue" individually. *Id.* at 831. The Court, however, held that, in the context of a global settlement, the "Rule 23 question [of class certification]

12

should be treated first because class certification issues are 'logically antecedent' to Article III concerns." *Id* at 816., citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997). Thus, the lower courts could — and, in that case, did — properly address the merits or propriety of (settlement) class certification *before* addressing the class plaintiffs' individual standing to sue. In this regard, the Court reasoned that class certification issues "pertain to ***statutory standing***," not Article III standing. *Id*. (emphasis added).

Here this Court did consider the "statutory standing" of the named Plaintiffs. The Court's November 21, 2007 Order held that the "Settlement Class" should be certified under Rule 23(a)(1)-(4), 23(b)(3), and 23(e). Silvious has not challenged that holding. [D.E. 119, at ¶¶ 4, 7, and 9]

The Plaintiffs also have Article III standing. The Plaintiffs all allege that they are indirect purchaser of bananas during the class period. [D.E. 38, ¶¶ 5, 7-9] Moreover, the Court found that their claims were typical of the claims of the absent class members. [D.E. 119, at 7(b), (c), and (e)] With these findings of fact and conclusions of law, the Court did not err in approving the settlement class agreement even though there was not a class representative from each of the 46 states and the District of Columbia. *See, e.g.*, *Payton v. County of Kane*, 308 F.3d 673, 680, 682 (7th Cir. 2002) (following *Ortiz,* the court remanded the action for consideration of Rule 23 class certification, holding that if the two plaintiffs could represent the class against the counties in which they were jailed and bailed, then given the common nature of the legal issue, the class representatives could represent plaintiffs in the other 17 counties at issue); *James v. City of Dallas, Tex.*, 254 F.3d 551, 562 & n.9 (5th Cir. 2001) (court affirms the holding in *Ortiz* in an

appeal of a class certification, holding that the named plaintiffs had statutory standing and Article III standing on some claims, but not others).[7]

No Eleventh Circuit case has specifically addressed whether a court may certify a multi-state indirect purchaser settlement class when there is not a class representative from each indirect purchaser state. In *Prado-Steiman v. Bush*, 221 F.3d 1266 (11th Cir. 2000), and *In re Terazosin Hydrochloride Antitrust Litigation*, 160 F. Supp. 2d 1365 (S.D. Fla. 2001), the Court of Appeals stated that district courts must address the Article III standing of each named representative prior to reaching any decision on the merits of class certification. These cases are, however, distinguishable on their facts. Furthermore, neither case addresses the Supreme Court's decision in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).

In *Prado-Steiman v. Bush*, 221 F.3d 1266 (11th Cir. 2000), the plaintiffs sought to certify a statewide — Florida — class of "[a]ll persons with developmental disabilities who are

---

[7]     The district courts are in accord.  *See, e.g.*, *In re Relafen Antitrust Litigation*, 221 F.R.D. 260, 268-270 (D. Mass 2004) (following *Ortiz*, the court rejects argument that certification was improper because there was not a class representative for each state for which plaintiffs asserted claims); *In re Pharmaceutical Industry Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 193-94 (D. Mass. 2003) (court generally defers to *Ortiz*); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 204-05 (D.N.J. 2003) (in an ADA action settlement class, following *Ortiz* and *Payton v. County of Kane,* holding that the *Ortiz* exception applies the court would consider the settlement class first, and then look at Article III standing; as long as one named class member has Article III standing on each issue, then there is standing in a constitutional sense); *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002) (following *Ortiz* and holding indirect purchases could bring a nationwide action although named plaintiffs represented only 15 states); *Mowbray v. Waste Mmgt. Holdings, Inc.*, 189 F.R.D. 194 (D. Mass. 1999), *aff'd*, 208 F.3d 288 (1st Cir. 2000) (holding Illinois class representative could represent class members from other states when the prerequisites of Rule 23 were satisfied); *see In re Remeron End-Payor Antitrust Litigation*, 2005 WL 2230314 at *20-21 (D.N.J. 2005) (court approved a class-wide settlement over the objection that class members from states whose antitrust laws do not provide for the recovery of damage to indirect purchasers should not receive compensation, stating, "[a]n important part of a settlement like this one is that Defendants achieve **"total peace"** thus all potential plaintiffs must be compensated in order to preclude future litigation attempts and allow such a settlement to consummate." (quoting *In re Chicken Antitrust Litigation*, 669 F.2d 228, 238 (5th Cir. 1982)).

presently receiving … or who are eligible" for various state Medicaid services.  *Id*. at 1270.  The named plaintiffs, developmentally disabled persons, alleged that they and unnamed class members were improperly denied various Medicaid services and asserted claims arising under ten different state and federal causes of action.  The district court certified the proposed class.  The defendants appealed, arguing that the "class d[id] not satisfy the commonality and typicality requirements because there [were] several class wide legal claims for which no named plaintiff possesse[d] Article III standing."  *Id*. at 1278.   The Eleventh Circuit stated that standing should be addressed before considering the merits of class certification, and that "at least one named representative of each class [must have] standing for each proffered class claim."  *Id*. at 1280.  Properly understood, however, and consistent with *Ortiz,* the Court was stating that the trial court must consider **statutory** standing under Rule 23 first, and that the proposed class did not possess the requisite typicality required by Rule 23(a).  *Id*. at 1226. [8]

Citing *Prado*, the district court, in *In re Terazosin Hydrochloride Antitrust Litigation*, 160 F. Supp. 2d 1365 (S.D. Fla. 2001), on a motion to dismiss, addressed the standing of "nominal" class representatives, in a multi-state indirect purchaser class action   The court granted the defendants' motion to dismiss the plaintiffs' state law claims for which there was no class representative identified in the complaint; *i.e.***,** none of the named plaintiffs alleged purchases in the states under which the plaintiffs brought their claims.  The situation before the

---

[8]      The court succinctly stated the issue as follows:

> All parties agree that some kind of class or classes should be certified, but Defendants contend that the single class certified by the district court was too broad.  Defendants specifically assert that Plaintiffs have not demonstrated that the claims of the named class representatives possess the requisite typicality with the claims of the class at large as required by Fed. R. Civ. P. 23(a).  We agree …. *Prado-Steiman,* 221 F.3d at 1267.

district court there is obviously distinguishable from this action where there are four indisputably qualified class representatives, particularly for a *settlement class.*  There is no question that the named Plaintiffs have Article III standing and suffered the *same type* of injury that they allege on behalf of other unnamed class members.   The named Plaintiffs are alleging that they were "overcharged" as a result of an illegal conspiracy and that is precisely the same injury for which they seek to represent the *settlement class*. [9]

In sum, although the case law on Rule 23 is not always pellucid, *Ortiz* rests "on the long-standing rule that, once a class is properly certified, statutory and Article III standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs." *Payton*, 308 F.3d at 680.   Stated differently, Rule 23 certification should be addressed first in those cases where it is the possibility of class certification that gives rise to the jurisdictional issue as to standing.  *See Ford v. NYLCare Health Plans of Gulf Coast, Inc*., 301 F.3d 329, 333 n.2 (5th Cir. 2002).  Applying that principle here, the Court's November 21, 2007 Order Approving Settlement is correct.

Accordingly, Silvious' motion to proceed in forma pauperis is frivolous, without legal merit as a matter of law and can (and should) be denied.

---

[9]      The district court also cited *Griffin v. Dugger*, 823 F.2d 1476 (11th Cir. 1987).  There, the named plaintiff, a state correctional officer, asserted a claim of race discrimination on behalf of himself and others similarly situated based on disparate treatment in discipline and promotions. The named plaintiff, however, also asserted a claim on behalf of African American *applicants* for correctional department jobs, asserting that the correctional department's "written entry-level examination" procedures were discriminatory.  *Id*. at 1484.  The district court held that the named plaintiff had standing to assert a claim on the basis of disparate treatment, but did not have standing to assert a claim, on behalf of *himself or others*, based on the department's testing requirements because he was already an employee of the department.  Thus, the named Plaintiff could not have suffered discrimination allegedly suffered by the class.  Put another way, Griffin did not purchase a banana during the class period and therefore he could not represent a class of those who did.

**5.      At A Minimum, the Court Should Require Silvious to Post a Bond**

If the Court grants Silvious' motion to proceed in forma pauperis, the Plaintiffs respectfully request, pursuant to Fed. R. App. P. 7, that Silvious post an appeal bond in the amount of  $100,000, which represents anticipated expenses to be incurred as a result of (a) copying, binding and other reproduction costs on appeal ($5,000), (b) the delay in settlement administration ($5,000) and (c) prospective attorneys' fees on appeal ($90,000).

An appeal bond is appropriate in this case.  This Court has granted final approval of this class action settlement that will result in the commencement of distribution of settlement benefits valued at approximately $2,500,000 to tens of thousands, if not hundreds of thousands of Settlement Class members across America.  The only obstacle to getting these benefits into the hands of the Settlement Class members is the notice of appeal by Silvious, who previously opted out of the Settlement Class, purports (without any credible and indeed contrary evidence) to have opted back in and filed a subsequent objection, but has demonstrated no interest in the litigation other than to extort money from the class and defense counsel.

According to statistics provided by the Federal Judicial Center, an appeal filed in the United States Court of Appeals for the Eleventh Circuit will take an average of nine and a half months from filing to disposition.  To discourage unmerited appeals and to secure the parties costs on appeal, this Court is empowered by Fed. R. App. P. 7 to secure not only the parties reproduction and copying costs for the appeal, but to secure for the Plaintiffs and Settlement Class their delay damages, including re-notice and anticipated settlement administration expenses caused by a nine and half month delay, as well as projected attorneys' fees on appeal.

## <u>CONCLUSION</u>

For the foregoing reasons, Silvious motion to proceed in forma pauperis on appeal and without prepayment of fees should be denied.

Dated:   February 26, 2008                          Respectfully submitted,


/s/  Susan L. Dolin
Susan L. Dolin
**SUSAN L. DOLIN, P.A.**
9000 Sheridan Street
Suite 93
Pembroke Pines, FL 33024
Tel.: 954-862-2284
Fax: 954-862-2287
E-mail: sdolinlaw@aol.com


Gordon Ball
**Ball & Scott**
550 Main Avenue, Suite 601
Knoxville, TN 37902
T (865) 525-7028
F (865) 525-4679
E-Mail:   gball@ballandscott.com


Krishna B. Narine
**Law Offices of Krishna B. Narine**
2600 Philmont Avenue, Suite 3400
Huntington Valley, PA 19006
T (215)782-3240
F (215) 782-3241
E-Mail:   knarine@kbnlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served by Electronic Mail and United

States Mail on this 26th day of February, 2008 upon all parties set forth below.


/s/ Krishna B. Narine
Krishna B. Narine

Tefft W. Smith
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
T (202) 879-5212
F (202) 879-5200
E-Mail:    tsmith@kirkland.com

*Attorneys for Defendants Chiquita Brands
International, Inc. and Chiquita Fresh North
America LLC*

Paul J. Schwiep (Florida Bar No. 823244)
Coffey Burlington
2699 South Bayshore Drive, Penthouse
Miami, FL 33133
T (305) 858-2900
F (305) 858-5261
E-Mail: pschwiep@coffeyburlington.com

*Attorneys for Defendants Chiquita Brands
International, Inc. and Chiquita Fresh North
America LLC*

Christopher T. Casamassima
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA 90071
Telephone:    (213) 680-8353
Facsimile:    (213) 680-8500
lbemis@kirkland.com

*Attorneys for Defendants Chiquita Brands
International, Inc. and Chiquita Fresh North
America LLC*

Owen F. Silvious
16497077 FCI-2 Butner
P.O. Box 1500
Butner, NC 27509

*Appellant*

Carlos M. Sires
Paul Kunz
Boies, Schiller & Flexner, LLP
401 East Las Olas Boulevard, Suite 1200
Ft. Lauderdale, FL 33301
T: (954) 356-0011
F: (954) 356-0022
E-Mail:    csires@bsfllp.com

*Attorneys for Fresh Del Monte Produce Inc.
and Del Monte Fresh Produce Company*

Marty Steinberg
D. Bruce Hoffman
Christopher N. Johnson
Hunton & Williams LLP
1111 Brickell Avenue
Miami, FL 33131
T: (305) 810-2500
F: (305) 810-2460
E-Mail:bhoffman@hunton.com
        msteinberg@hunton.com

*Attorneys for Dole Food Company, Inc. and
Dole Fresh Fruit Company*

Kenneth Vianale
Vianale & Vianale LLP
2499 Glades Road, Suite 112
Boca Raton, FL 33431
T (561) 392-4750
F (561) 392-4775
E-Mail:    kvianale@vianalelaw.com

*Plaintiffs' Co-Liaison Counsel*

Lawrence P. Bemis (Florida Bar No. 618349)
8850 Porter Loop
Jackson, Wyoming 83001
T (307) 734-0279
E-Mail:    Lawrence.Bemis@gmail.com

*Attorneys for Defendants Chiquita Brands
International, Inc. and Chiquita Fresh North
America LLC*

# EXHIBIT 1

07-15894-D

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT


JOE SOLO, TIM McGRAW,
JEANNIE STAMAN, ALAN STONE,
and DENNIS COUGHLIN on behalf
of themselves and others similarly
situated in California, Kansas,
Nebraska and Tennessee,

                    Plaintiffs,

OWEN F SILVIOUS,

                    Appellant,

versus                                    07-15894-D


CHIQUITA BRANDS INTERNATIONAL, INC.,
CHIQUITA FRESH NORTH AMERICA, LLC.,
FRESH DEL MONTE PRODUCE, INC.,
DELMONTE FRESH PRODUCE COMPANY,
DOLE FOOD COMPANY, INC.,  and
DOLE FRESH FRUIT COMPANY,

                    Defendants/Appellees.

---

APPEAL FROM THE JUDGMENTS OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA. THE HONORABLE ADALBERTO
JORDAN, UNITED STATES DISTRICT JUDGE.

---

### BRIEF FOR APPELLANT OWEN F SILVIOUS
### AN UNNAMED CLASS MEMBER

---

### ORAL ARGUMENTS NOT REQUESTED

---

                         Owen F Silvious
                         16497077 FCI-2
                         PO Box 1500
                         Butner, NC 27509

                                   Appellant

TABLE OF CONTENTS

1.    Certificate of Compliance                          i

2.    Statement of Citations (Authorities)               ii

3..   Statement of Jurisdiction                          1

4.    Statement of Issues                                1

5.    Statement of Case                                  2

6.    Statement of Facts                                 5

7.    Summary of Issues (Arguments)                      7

8.    Issues (Arguments)                                 8

9.    Conclusion (Relief Requested)                      13

10.   Certificate of service                             15

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)


    This brief complies with the type-volume limitation of
the Federal Rule of Appellate Procedure Rule 32(a)(7) because
it contains no more than 14,000 word. Specifically, all portions
of the brief other than the Table of Contents, Table of Authorities,
Certificate of Compliance   contain  3,282      words.


Dated      2-4-08

                                        OWEN F Silvious
                                        Appellant/Unnamed Member

i

# STATEMENT OF CITATIONS (AUTHORITIES)

1.  Lewis v. Casey,  518 US 343, 347
    116 S Ct 2174, 135 L Ed 2d 606(1996)                    10

2.  Lujan v. Defenders of Wildlife, 504 US 555
    112 S Ct 2130, 119 L Ed 2d 351(1992)                    10

3.  Warth v. Seldin, 422 US 490, 498,
    95 S Ct 2197,  45 L Ed 2d 343(1975)                     10

4.  Washer v. Bullitt,  110 US 558, 562
    4 S Ct 249,  28 L Ed 249(1884)                          8


5.  Bonner v. City of Prichard
    661 F 2d 1206, 1209(11th Cir 1981)                      8

6.  Cedillo v. Standard Oil Company
    261 F 2d 443(5th Cir 1958)                              8

7.  Dynamic Images Tech Inc v. US
    221 F 3d 34(1st Cir 2000)                               10

8.  Crysen/MOntenay Energy Company
    226 F 3d 160(2d Cir 2000)                               8

9.  Ferdik v. Bonzelet,
    463 F 2d 1228, 1239(9th Cir 1992)                       8

10. Griffin v. Dugger,
    823 F 2d 1476, 1483(11th Cir 1987)                      10

11. Hal Roach Studios V. Richard Feiner & Co
    896 F 2d 1542(9th Cir 1989)                             9

12. LaBatt v. Twomey, 513 F 2d 641(7th Cir 1975)
                                                            8
13. Wilson v. First HOuston Inv. Corp
    566  F 2d 1235(5th Cir 1975)                            8

14. Young V. City of Mt Rainer
    238 F 3d 567(4th Cir 2001)                              8

15.     Anderson v. USAA Casulty Inc Co.                        8
        218 F.R.D. 307(D. DC 2003)

16.     Automobile Refinishing Paint Antitrust
        2007 US Dist LEXIS 34135(ED PA 2007)                    10

17.     Ditropan XL Antitrust
        2007 US Dist LEXIS 38068(ND CA 2007)                    10

18.     Dynamic Randon Access Memory Antitrust
        2007 US Dist LEXIS 44354(ND CA 2007)                    10

19.     Graphics Processing Units Antitrust
        2007 US Dist LEXIS 76601(ND CA 2007)                    10

20.     Hemispherx Biopharma v. Asensio,
        2007 US Dist LEXIS 10775(ED PA 2007)                    9

21.     Intel Corp Microprocessor Antitrust
        2007 US Dist LEXIS 50564(D. DE 2007)                    10

22.     Leider v. Ralfe,
        387 F Supp 2d 283(SD NY 2005)                           10

23.     Lord v. Lving Bridges,
        1999US Dist LEXIS 11712(ED PA 1999)                     9

24.     New Motor Vehicles Canadian Export Antitrust
        243 F.R.D. 20(D. Maine 2007)                            10

25.     OSB Antitrust, 2007 US Dist LEXIS 56617(ED PA 2007)  10

26.     State of California v. Infineon Tech AG,
        2007 US Dist LEXIS 67475(ND CA 2007)                    10

27.     Temple v. Circuit City Stores,
        2007 US Dist LEXIS 70747(ED NY 2007)                    10

28.     Terazosin Hydrochloride Antitrust,
        160 F Supp 2d 1365(SD FL 2001)                          10

29.     Eugene Higgins v. Archer Daniels-Midland Co.
        No. D-0202-cv-0200306168(2d Judicial District,          10
        County of Bernalillo, New Mexico

## STATUTES

28 USC 1291                                    1

28 USC 1332                                    1

## RULES

Rule 25(d)(1)   FRAP                           15

Rule 25(d)(2)   FRAP                           15

Rule 32(a)(7)   FRAP                           i

## JURISDICTION

This court has jurisdiction over this appeal of the final orders (Final Approval of Settlement and Certification of Class and Final Order Approving Attorney Fees). (Docket No. 119 and Docket No. 120) pursuant to 28 USC 1291. The district court alledegly had jurisdiction pursuant to 28 USC 1332. The Orders were entered on November 21, 2007. A Notice of Appeal was timely filed on December 17, 2007.

## STATEMENT OF ISSUES

1.   Does the Consolidated Amended Class-Action Complaint (Docket No. 38) filed on March 3, 2006 supersede the Original Complaint (Docket No. 1) filed on August 8, 2005 and the Amended Indirect Purchaser Class-Action Complaint (Docket No. 4) filed on October 21, 2005 and is the last filed Consolidated Amended Class-Action Complaint filed on March 3, 2006 (Docket No. 38) the operative instrument?

2.   Did the named plaintiffs who resided in and purchased bananas in the states of California, Kansas, Nebraska and Tennessee have standing to represent unnamed persons in the other forty two states and the District of Columbia where there was no named class representative for those indirect-purchaser states and the District of Columbia and did the dietrict court have jurisdiction to certify the class action and issue orders binding other persons in those other states where there were no named class representative listed for those states?

1

## STATEMENT OF CASE

On August 8, 2005, a class action complaint (Doc 1) was filed by plaintiffs Susan Jockers, Joelle Prochera and Tim McGraw (allegedly) on behalf of themselves and all others similarly situated in Arizona, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, South Carolina, South Dakota, Tennessee, Vermont, West Virginia, Wisconsin and the District of Columbia against defendants Chiquita Brands International Inc., Chiquita Fresh North America, LLC, Fresh Del Monte Produce, Inc., Dole Food Company, Inc., Dole Fresh Fruit Company, Grupo Noboa, SA, and Exportadora Bananera Noboa, SA.

On October 21, 2005, an Amended Indirect Purchaser Class-Action Complaint (Doc 4) was filed by plaintiffs Joelle Prochera, Joe Solo, Tim McGraw, Dianne Lillehei, Melinda Friedman and Dennis Coughlin on behalf of themselves and all others similarly situated in the states of Arizona, California, Kansas, Minnesota, New York and Tennessee. All the previously named plaintiffs and states were droped from this Amended pleading. By established law this Amended Complaint superseded the original complaint filed on August 8, 2005.

On March 3, 2006, a Consolidated Amended Class-Action Complaint (Doc 38) was filed by plaintiffs Joe Solo, Tim McGraw, Jeannie Staman, Dennis Coughlin and Alan Stone on behalf of themselves and all others similarly dituated in the states of California, Kansas, Nebraska and Tennessee. No other named plaintiffs or states were named in this Consolidated Amended Class-Action Complaint. By established law, this Consolidated Amended Class-Action Complaint superseded the Amended Indirect Purchaser Class-Action Complaint (Doc 4) filed on October 21, 2005 and this final filed Consolidated Complaint was the only operative complaint in the action.

According to the Docket Sheet, on July 21, 2007, the district court granted preliminary approval of the settlement agreement, approving notice and scheduling a fairness hearing. The Settlement Agreement was into on June 26, 2007 between the plaintiffs listed in the last filed Consolidated Amended Class-Action Complaint and defendants Chiquita Brands International, Inc., Chiquita Fresh North America LLC., Fresh Del Monte Produce, Inc., Del Monte Fresh Produce Company, Dole Food Company, Inc., and Dole Fresh Fruit Company. The other two previously named defendants has been dismissed from the action. The Settlement Agreement allegedly included unnamed persons from an additional forty two (42) states and the District of Columbia, however there were no named class plaintiffs listed in the last filed Consolidated Amended Clas-Action Complaint for the additional 42 states and the District of Columbia. On August 14, 2007, one Legal Notice was published in one newspaper, the USA Today, (See page 3-1) pertaining to the proposed Settlement Agreement and purportedly binding persons in forty six states and the District of Columbia and others, however there were no named class member representative listed in the last filed Consolidated Complaint for the additional states named in the Legal Notice and the Settlement Agreement as being part of the class action.

On August 15, 2007, Silvious mailed an opt-out letter to the Clerk of Court. (See page 3-2). No docket entry shows receipt of this opt-out letter. On September 10, 2007, Silvious received an Order from the court stating he could not opt-out on behalf of any other persons. (See page 3-3&4) On September 11, 2007 (Tuesday), Silvious mailed LETTER TO THE Clerk of the Court cancelling his previous opt-out letter. The docket sheet does not show receipt of that letter either and there was no docket entry showing receipt of Silvious' origial letter. The docket sheet only lists an opt-out by Robert Goode and Charles L. Brown (Doc No 97 and 102). The docket sheet shows an objection to the settlement by Mason P James, Tommy Elders and Mattie Carroll as objectors.

analysis shows. In the three years ended in 2006, at least 280 Americans died in automobile and bus crashes in Mexico, the nation Americans visit most.

Contrast that with Americans' experience in Canada, their second-most-visited country. Though Canada gets about 70% of the number of U.S. visitors to Mexico, the State Department has recorded just 11 U.S.

whether you're responding to content online or in the newspaper.

A story in Monday's Money section gave the incorrect favorite book of Lynda Resnick, founder of POM Wonderful. Resnick's favorite book is *Swann in Love* by Marcel Proust.

Legal Notice
Legal Notice

# If You Purchased Bananas from May 1, 1999 to the Present

## Please Read this Legal Notice

This notice is to inform you of a proposed settlement in a class-action lawsuit, captioned *Solo, et al. v. Chiquita Brands International, Inc., et al.* Civil Action No. 05-61335-CIV-JORDAN/KLEIN, which Joe Solo, Tim McGraw, Jeannie Staman, and Dennis Coughlin brought by class-action counsel on behalf of consumers of bananas in 30 states and the District of Columbia. This lawsuit, which is currently pending in the United States District Court for the Southern District of Florida, Miami Division, relates to the alleged price-fixing of Bananas.

### Who Is Involved?

You are a member of the Settlement Class and your rights are affected if you are a person who purchased indirectly (*i.e.*, other than from Chiquita Brands International, Inc. and Chiquita Fresh North America LLC ("Chiquita"); Fresh Del Monte Produce Inc. and Del Monte Fresh Produce Company ("Del Monte"); and Dole Food Company, Inc. and Dole Fresh Fruit Company ("Dole") or any other producer or grower of bananas) bananas, from May 1, 1999 to the present (the "Class Period"), in Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Louisiana, Maine, Massachusetts, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Hampshire, Nevada, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, West Virginia, Wisconsin, Washington, or any other State or Territory that, up through the time of the execution of this Settlement Agreement, permitted by statute, common law or judicial precedent indirect purchasers standing to sue for alleged antitrust or any other tort claim, including unjust enrichment and/or unfair business practice violations based on the types of conduct alleged in this Action. (the "Class Jurisdictions"). "Bananas" mean any fruit from any plant of the genus Musa.

### Who are the Settling Defendants?

Chiquita, Del Monte and Dole ("Settling Defendants"). In addition, these settlements will result in the release of all claims against Chiquita, Del Monte and Dole.

### What is the Class-Action About?

Plaintiffs allege that the Settling Defendants participated in a conspiracy to raise, fix, maintain, or stabilize Banana prices at artificially high levels, in violation of state antitrust and consumer-protection laws. The Settling Defendants deny all claims of wrongdoing asserted by Plaintiffs. This Settlement does not mean that any law was broken.

### What Are the Terms of the Settlement?

Within one year (365 days) following final approval of this Settlement Agreement, the Settling Defendants shall provide to America's Second Harvest (The Nation's Food Bank Network) or another comparable charity fruits (including Bananas), vegetables and/or packaged foods with a retail value of $2,500,000. The Settling Defendants shall instruct the charity to distribute the products in as many of the Indirect Purchaser States as feasible and as ratably among the Indirect Purchaser States as feasible. This is called a *cy pres* distribution. Plaintiffs' counsel will petition the Court for attorneys' fees of no greater than $250,000, plus reimbursement for their out-of-pocket expenses up to $75,000.

### What Are My Legal Rights?

If you are a member of the Settlement Class and the Court approves the proposed Settlements and the Settlements become effective, you will be bound by all orders and judgments of the Court and any claims you may have against Settling Defendants for the conduct alleged in this action will be resolved and released.

### How to Not Participate in the Settlement.

If you do not wish to be a member of the Settlement Class, you may exclude yourself by sending a letter or postcard to the Clerk of the Court. You must send such letter or postcard to the United States District Court, Southern District of Florida, Office of the Clerk of Court, U.S. Courthouse 301 North Miami Avenue, Miami, FL 33128. To exclude yourself from the Settlement Class, you must include your name, address, and telephone number and a statement that you wish to be excluded, and your request must be received no later than September 14, 2007.

### How to Object to the Settlement

The Court will hold a hearing to determine if the proposed Settlements are fair, reasonable, and adequate. The Court will conduct a fairness hearing on November 16, 2007 at 9:00 a.m. in the United States District Court, Southern District of Florida, Office of the Clerk of Court, U.S. Courthouse 301 North Miami Avenue, Miami, FL 33128. If you remain a member of the Settlement Class, you or your counsel have the right to appear before the Court and object to the Settlement. To do so, however, you must file with the Court a Notice of Intention to Appear and Object, and serve a copy on Plaintiffs' Class Counsel. Objections must be filed and served no later than September 14, 2007.

For a copy of the proposed Settlement, write the Solo Settlement Administrator, PO Box 62, Minneapolis, MN 55440-0062.

*USA TODAY*
8-14-07
Tuesday

*front pg.*
8-15-07

LEGAL NOTICE

September 11, 2007 (Tuesday)

*(Copy)*

Clerk of Court
United States District Court
Southern District of Florida
United States Court House
301 North Miami Avenue
Miami, Florida 33128

Dear Sir/Madam:

    Re: Joe Solo, et seq., v. Chiquita Brands International Inc., et seq.
       Civil Action No: 05-61335-Jordan

This letter is to inform you that I hereby cancel my opt-out Notice
dated August 15, 2007.

                    Sincerely,

                    Owen F Silvious
                    225-22 Indian Hollow Road
                    Winchester, VA 22603


### AFFIDAVIT

I declare under penalty of perjury that I place this Notice in the
FCI-2 Butner, mail system on September 11, 2007, postage prepaid addressed
to the Clerk of the Court. 28 USC 1746 applies.

Dated this 11th  day of September 2007 at FCI-2 Butner, NC.

                    _____
                    Owen F Silvious

*Clerk:*
*Please send me copy*
*of docket sheet*
*et*

*Docket sheet does*
*NOT show receipt*
*by Clerk of Court letter*
*the opt-out or cancellation.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 05-61335-CIV-JORDAN

JOE SOLO, et. al.,                          )
                    Plaintiffs              )
                                            )
vs.                                         )
                                            )
CHIQUITA BRANDS INTERNATIONAL,              )
et. al.,                                    )
                                            )
                    Defendants              )

## ORDER

The clerk is directed to file Mr. Silvious' notice of opt-out of the settlement (which is attached).  The parties must provide a copy of this notice to the claims administrator.

Mr. Silvious, however, is advised that he cannot opt-out on behalf of any other individuals in the states of Virginia, West Virginia, and North Carolina.  He may only opt out on his own behalf.

DONE and ORDERED in chambers in Miami, Florida, this 31st day of August, 2007.

Adalberto Jordan
United States District Judge

Copy to:        All counsel of record


                Owen F. Silvious
                225-22 Indian Hollow Road
                Winchester, VA 22603

3-3

August 15, 2007


Clerk of the Court
Southern District of Florida
US Court House
301 North Miami Avenue
Miami, FL 33128


Dear Sir/Madam:


    RE:  Solo, et el., v. Chiquita Brands International Inc. et el.
          Civil Action No:  05-61335-CIV-JORDAH/KLEIN


Reference to the proposed settlement in the above class action, I hereby
opt-out of the settlement on behalf of myself and other individuals
in the states of Virginia, West Virginia and North Carolina.

Thank you for your help in this matter.


Sincerely,

Owen F Silvious
225-22 Indian Hollow Road
Winchester, VA 22603
540-722-8062

*Docket sheet does NOT show receipt by clerk of court.*

*P.S. Please send me copy of docket sheet.*

---

3-4

Because Silvious cancelled his opt-out, he became an alleged member of the class action and has a right to bring this appeal.

On September 18, 2007, Silvious filed a Motion for the Court to Disapprove the Settlement Agreement. (Doc no. 101). The court changed that motion to an objection. (Doc No. 106) and the court never ruled on Silvious' motion to Dispprove the Settlement Agreement.

On November 21, 2007, the district court approved the Settlement Agreement, Certified the Class and Approved Payment of Attorney Fees. This final approval included unnamed persons from the additional forty two states and the District of Columbia that were never part of the action and not included in the last filed Consolidated Amended Complaint (Doc 38). The Settlement Agreement and Final Order stated they would bind persons in the listed states and the District of Columbia even though there were never any listed class action representative from the additional states and the District of Columbia. Silvious disagrees with thie Settlement Agreement and Final Orders issued by the district court on November 21, 2007.

On December 17, 2007, Silvious filed a timely Notice of Appeal of the Settlement Agreement, Class Certification and Attorney Fees. Silvious is an inmate at FCI-2 in Butner, NC.

The case is now pending in this Court.

4

## STATEMENT OF FACTS

Silvious alleges that plaintiffs Joe Solo, Tim McGraw, Jeannie Staman, Dennis Coughlin and Alan Stone who are residents of and purchased bananas in the states of California, Kansas, Nebraska and Tennessee only have standing to represent persons in those four states and no others because this is an indirect-purchase action. They do not have standing to represent persons in the other forty two states and the District of Columbia because there there are no named indirect-purchaser class action representative listed in the last filed Consolidated Amended Complaint (Doc 38) for the states of Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Louisiana, Maine, Massachusetts, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, New Hampshire, Nevada, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Vermont, Virginia, West Virginia, Wisconsin, Washington and the District of Columbia, or any other state or territory not listed in the last filed complaint and no named indirect-purchaser class representative is listed for the above named states and the District of Columbia. The only states the named plaimntiffs have standing to represent and bind persons are in the states of California, Kansas, Nebraska and Tennessee, and no other state.

It is established law that there must be a class representative for each indirect-purchaser state that can represent persons from those states if that named class representative purchased the product that is the subject of the action. None of the named plaintiffs reside in or purchased bananas in the additional forty two states and the District of Columbia listed above. Consequently, the five named plaintiffs have no standing to represent persons in the other forty two states and the District of Columbia.

Because the named plaintiffs did not have standing to represent persons in the other forty two states and the District of Columbia, the district court did not have subject matter jurisdiction and did not have jurisdiction or authority to certify a class action that included persons in the other forty two states and the District of Columbia and did not have jurisdiction to approve any Settlement Agreement or Approve Attorney Fees that would bind persons in the other forty two states and the District of Columbia. The Final Judgment and Order approving the Settlement Agreement, Attorney Fees and Certification of Class that included persons from the other forty two states and the District of Columbia listed above are VOID because the named plaintiffs did not have standing and the district court did not have jurisdiction over persons in the additional forty two states and the District of Columbia.

Silvious alleges that the last filed Consolidated Amended Class-Action Complaint (Doc 38) filed in the district court on March 3, 2006 is the only complaint that is operative in this action. The Consolidated Amended Class Action Complaint named Joe Solo, Tim McGraw, Jeannie Staman, Dennis McGoughlin and Alan Stone and others similarly situated in the states of California, Kansas, Nebraska and Tennessee as the only named plaintiffs and the Consolidated Complaint states very clearly they only bring the action on behalf of themselves and persons in the states of California, Kansas, Nebraska and Tennessee and no others. Plaintiffs Solo and Stone are residents of California. Plaintiff Staman is a resident of Nebraska. Plaintiff Tim McGraw is a resident of Kansas and Plaintiff Coughlin is a resident of Tennessee. These four states are listed in the Consolidated Amended Complaint as the "Class Jurisdictions" only and the final Consolidated Amended Complaint (Doc 38) does not include any of the additional forty two states and the District of Columbia. IT IS ESTABLISHED LAW THAT THE FINAL AMENDED COMPLAINT SUPERSEDES ANY PREVIOUSLY FILED COMPLAINT. Citations quoted below.

## SUMMARY OF ISSUES

There are only two issues in this appeal.

The first issue is whether the final Consolidated Amended Complaint supersede any all other previously filed complaints in this action.  It is established law (citations quoted  below) that an Amended Complaint (Pleading) supersedes the previously filed instrument.

The Second issue is that plaintiffs Solo, Stone, Staman, McGraw and Coughlin did not have standing to represent persons in the other forty two states and the District of Columbia because they do not reside in and did not purchase bananas in any of the forty two states or the District of Columbia and the district court did not have subject  matter jurisdiction over persons in the other forty two states and the District of Columbia because there were no named class representative listed in the last filed Amended Complaint (Doc 38) who resides in or purchased bananas in any of the additional forty two states and the District of Columbia. It is established law in an indirect-purchaser class action there must ne a named plaintiff in each of the indirect purchaser states for the court to have subject matter jurisdiction over other persons in the other states or the class jurisdiction.

ARGUMENTS (ISSUES)

1.   Silvious alleges that based on established law in
this and other courts, the final Consolidated Amended Class-
Action Complaint (Doc 38) filed on March 3, 2006 supersedes
the original complaint (Doc 1) filed on August 8, 2005 and
the Amended Indirect Purchaser Class-Action Complaint (Doc 4)
filed on October 21, 2005. The last filed Consolidated Amended
Complaint (Doc 38) filed on March 3, 2006 is the only operative
complaint and the district court was required to use that
instrument throughout the action. The last Consolidated Amended
Complaint (Doc 38) only lists Joe Solo, Tim McGraw, Jeannie
Staman, Dennis Coughlin and Alan Stone as the only plaintiffs
in this action and they represent persons only in the states of
California, Kansas, Nebraska and Tennessee and no other persons.
That is stated very clearly on the cover of the Consolidated
Amended Class-Action Complaint (Doc 38). Case law mandates that
the last filed Consolidated Amended Complaint (Doc 38) is the
only operative instrument in this action. This Consolidated
Amended Complaint supersedes any previously filed complaints
and the district court is required to accept the allegations
stated in the Consolidated Amended Complaint. See WASHER v. BULLITT,
110 US 558, 562, 28 L Ed 249, 4 S. Sup. Ct. 249(1884); WILSON v.
FIRST HOUSTON INV. CORP., 566 F 2d 1235(5th Cir 1975**); CEDILLO
v. STANDARD OIL CO, 261 F 2d 443( 5th Cir1958**);  ANDERSON v.
USAA CASULTY INS CO., 218 F. R. D. 307(D.DC 2003); LABATT v. TWOMEY,
513 F 2d 641(7th Cir 1975); YOUNG v. CITY OF MT RANIER, 238 F 3d
567(4th Cir 2001); In re CRYSEN/MONTENAY ENERGY CO, 226 F 3d 160,
(2dtCtir 2000); DYNAMIC IMAGES  TECH INC v. US, 221 F 3d 34(1st
2000);   FERDIK v. BONZELET, 963 F 2d 1228, 1239(9th Cir 1992);

**In BONNER v. CITY OF PRICHARD, 661 F 2d 1206, 1209(11th Cir 1981),
  the Court of Appeals for the Eleventh Circuit addopted as binding
  precedent all decisions that the former Court of Appeals for the
  Fifth Circuit rendered before October 1, 1981.

8

See also HEMISPHERX BOOPHARMA, 2000 US Dist LEXIS 10775(ED PA 2000);   LORD v. LIVING BRIDGES, 1999 US Dist LEXIS 11712(ED PA 1999);   HAL ROACH STUDIOS v. RICHARD FEINER & CO, 896 F 2d 1542(9th Cir 1989);   The Consolidated Amended Complaint (Doc. 38), filed on March 3, 2006 is the only operative instrument in this action.

   2.   Silvious alleges that because this is an indirect purchaser action there must be a named class representative from each of the class jurisdictions in order to bind persons in those other jurisdictions (states). If there is no named class representative for each of the additional forty two states and the District of Columbia, then the named plaintiffs who do not reside in or purchased bananas in those additional forty two states and the District of Columbia do not have standing to represent persons not residing in the plaintiff's class jurisdictions and the district court did not have subject matter jurisdiction to certify the class or approve any Settlement Agreement or Approve any Attorney Fees on behalf of any persons other than the named plaintiff's in the Consolidated Amended Complaint. In this action because there were no named class representatives listed for the states of (1) Alabama, (2) Alaska, (3) Arizona, (4) Arkansas, (5) Colorado, (6) Connecticut, (7) District of Columbia, (8) Florida, (9) Georgia, (10) Hawaii, (11) Idaho, (12) Illinois, (13) Iowa, (14) Louisiana, (15) Maine, (16) Massachusetts, (17) Maryland, (18) Michigan, (19) Minnesota, (20) Mississippi, (21) Missouri, (22) Montana, (23) New Hampshire, (24) Nevada, (25) New Jersey, (26) New Mexico, (27) New York, (28) North Carolina, (29) North Dakota, (30) Ohio, (31) Oklahoma, (32) Oregon, (33) Pennsylvania, (34) Rhode Island, (35) South Carolina, (36) South Dakota, (37) Texas, (38) Utah, (39) Vermont, (40) Virginia, (41) West Virginia, (42) Wisconsin and (43) Washington, persons residing in these states and the District of Columbia cannot be bound by any Settlement Agreement or any

court orders pertaining to these forty two states and the
District of Columbia.The matter of fact is there must be a
named class representative for each of the indirect purchaser
states named in the action, otherwise the court does not have
jurisdiction and any judgment issued by the court is VOID
because the court did not have subject matter jurusdiction.
See GRIFFIN v. DUGGER, 823 F 2d 1476, 1483(11th Cir 1987);
In re TERAZOSIN HYDROCHLORIDE ANTITRUST LITIG, 160 F Supp 2d
1365(SD FL 2001);   In re GRAPHICS PROCESSING UNITS ANTITRUST
LITIG, 2007 US Dist LEXIS 76601(ND CA 2007); TEMPLE v. CIRCUIT
CITY STORES, 2007 US Dist LEXIS 70747(ED NY 2007); In re OSB
ANTITRUST LITIG, 2007 US Dist LEXIS 56617(ED PA 2007); In re
INTEL CORP MICROPROCESSOR ANTITRUST LITIG,  2007 US Dist LEXIS
50654(D. DE 2007); In re NEW MOTOR VEHICLES CANAADIAN EXPORT
ANTITRUST LITIG, 243 F.R.D. 20(D. Maine 2007); In re DITROPAN
XL ANTITRUST LITIG, 2007 US Dist LEXIS 38068(ND CA 2007);
In re AUTOMOBILE REFINISHING PAINT ANTITRUST LITIG, 2007 US
Dist LEXIS 34135(ED PA 2007); EUGENE HIGGINS v. ARCHER DANIELS
MIDLAND CO, et el., (MSG Indirect Purchaser state antitrust
litig), No. D-0202-cv-0200306168(2d Judicial District, County
of Bernanlillo, New Mexico 2006). This MSG Antitrust Action
listed 24 states and named 24 class representatives for each
of the 24 states listed in the complaint). In re DYNAMIC RANDOM
ACCESS MEMORY ABTITRUST LITIG, 2007 US Dist LEXIS 44354(ND CA 2007);
STATE OF CALIFORNIA v INFINEON TECH AG, 2007 US Dist LEXIS 67475
(ND CA 2007); LEIDER v. RALFE, 387 F Supp 2d 283(SD NY 2005);
LESIC v. CASEY, 518 JS 343, 347, 116 S. Ct. 2174, 135 L Ed 2d
606(1996); LUJAN v. DEFENDERS OF WILDLIFE, 504 US 555,560-61,
112 S. Ct. 2130, 119L Ed 2d 351(1992); WARTH v. SELDIN, 422 US
490, 498, 95 S. Ct. 2197, 45 L Ed 2d 343(1975);

Because the last Consolidated Amended Complaint (Doc 38) filed in the district court on March 3, 2006 only names plaintiff's from the states of California, Kansas, Nebraska and Tennessee, the named plaintiff's in this action did not have standing to represent persons in the other forty two states and the District of Columbia and could not bind other persons in the other states to any Settlement Agreement and the district court did not have subject matter jurisdiction over persons in the other forty two states and the District of Columbia. The district court did not have the authority to certify the class action for the forty two states and the District of Columbia or issue any orders binding persons in the other forty two states and the District of Columbia. Any orders allegedly binding such persons would be VOID for want of jurisdiction over the other persons.

3.   Silvious hereby states that during the period January 1, 1999 and Februarey 10, 2005, he indirectly purchased bananas and products containing bananas from defendant's during his visits to the following 18 states:  (1) Alabama(Mobile and Birmingham cities); (2) Arkansas (Little Rock); (3) Florida (Miami, Ft Lauderdale and Margate cities); (4) Hawaii(Honolulu); (5) Illinois (Chicago); (6) Maryland (Baltimore, Frederick and Hagerstown cities); (7) Michigan (Detroit); (8) Mississippi (Gulfport and Biloxi cities); (9) Nevada (Las Vegas); (10) New Jersey (Newark and Atlantic City); (11) New York (New York City, Buffalo and Niagara Falls); (12)  North  Carolina (Charlotte and Raleigh cities); (13) Pennsylvania (Pittsburgh, Philadelphia, Harrisburg and Meadville cities); (14) South Carolina (Charleston); (15) Texas (Dallas,  Ft Worth and Houston cities); (16) Virginia (All over state); (17) West Virginia (Moorefield, Inwood, Franklin, Martinsburg, Morgantown and Wardensville cities); and (18) the District of Columbia. The following states mandate statutory damages for violation of their antitrust and consumer protection

laws: Alabama ($500.00); Hawaii ($5,000.00); Michigan ($250.00); Mississippi ($500.00); New York ($50.00); Virginia ($500.00) and West Virginia ($200.00). Total $7,000.00. Silvious is entitled to these statutory damages against each of the named defendant's, each Attorney and each law firm involved in this action. The attorney's and law firms involved in this action are experienced attorney's and are required to know the laws and court decisions pertaining to the issues raised in this appeal by Silvious, plus Silvious is entitled for costs, fees and expenses he has incurred in this action and appeal, The attorneys should not sign or have their names placed on the pleadings wherein they have made gross misrepresentations and committed mail and wire fraud against the court and the more than 120 million persons in the forty two states and the District of Columbia.

12

RELIEF REQUESTED

For the reasons stated in this brief, Silvious is requesting
the following relief from this court:

    1.   Reverse/Vacate the Final Approval of Settlement
Agreement and Final Order (Doc. 119) dated November 21, 2007,
certifying the class action (par 5 of Order) and Approving the
Settlement Agreement dated June 26, 2007 between the plaintiffs
and defendants binding persons to the Orders and Settlement
Agreement in the forty two states and the District of Columbia
because there were no named indirect purchaser class representative
named in the Consolidated Amended Complaint (Doc 38) and because
the district court did not have subject matter jurisdiction over
the persons in the forty two states and the District of  Columbia
and,

    2.   Reverse/Vacate the Order dated November 21, 2007
(Doc 120) approving the payment of Attorney Fees and Expenses
for the reasons stated in this brief.,
and,

    3.   Award judgment for Silvious for all fees, costs and
expenses he has incurred in this action and appeal against each
of the named defendant's, against each named attorney and law firm,
and,

    4.   Award Silvious or his assigns statutory damages in
the amount of $7,000.00 against each of the named defendant's
and against each of the named attorneys and against each of the
named law firms involved in this action and this appeal for
bringing this appeal in the interest of the more than 120 million
persons in the additional forty two states and the District  of
Columbia that once this court vacates the district court orders
and Settlement Agreement persons in the other forty two states
and the District of Columbia will be able to either bring a
indirect purchaer  class action for persons in the forty two
states and the District of Columbia if there is a named class

representative for each of the forty two states and the District
of Columbia in the complaint or the persons in the states that
allow statutory damages for violation of their antitrust and
consumer protection laws will be able to bring individual actions
in those states amd receive statutory damages, plus fees, expense,
costs and attorney fees for the individual action.

5.    Direct that all the attorney's and law firms involoved
in this action both in the district court and this court to
return all fees and costs, including attorney fees, they have
received or will receive from this action and pay those fees and
costs to an organization designated by Silvious for indigent persons,
elderly persons and homeless persons.

6.    Award Silvious such other relief as the court may deem
proper because of the gross misrepresentations and massive fraud
the attorney's have committed against Silvious, the district court,
this court and the more than 120 million persons in the other
forty two states and the District of Columbia.listed in the Legal
Notice published in the USA Today Newspaper dated August 14, 2007,
and in the Settlement Agreement dated June 26, 2007.


Dated this ___5ᵗʰ___ day of __February_____ 2008.


Owen F Silvious                          _Owen Silvious_____
16497077 FCI-2                           Owen F Silvious, Pro Se
PO Box 1500                              Appellant/Unnamed Class Member
Butner, NC 27509


                                14

## CERTIFICATE OF SERVICE

### DATE OF FILING BRIEF

Pursuant to the provisions of Rule 25(d)(2) of the Federal Rule of Appellate Procedures, I certify that Appellant's Opening Brief was filed on_____. On that date, the original and three copies of the Opening Brief were placed in a sealed envelope, addressed to the Clerk, United States Court of Appeals for the Eleventh Circuit, at 56 Forsyth Street, N.W., Atlanta, Georgia 30303-2289, and deposited in the FCI-2 mail system, with first class postage, prepaid.

### SERVICE OF COPIES OF BRIEF ON PARTIES

Pursuant to Rule 25(d)(1) of the Federal Rule of Appellate Procedures, I certify that one copy of the attached Appellants Opening Brief was sent by first class mail in a properly addressed envelope with first class postage prepaid before 5:pm on the _13_ day of ___February___ 2008, to the attorney of record who filed a Certificate of Appearance with the Clerk of the Court for each of the parties at the addresses listed below:

List of Attorneys for Defendants and Plaintiffs are attached as pages 15-1 and 15-2 and 15-3.

15

ATTORNEYS  FOR DEFENDANTS


Eduado W. Gonzalez
D. Bruce Hoffman
Hunton & Williams LLP
1111 Brickell Ave., Ste 2500
Miami, FL 33131


Mr Martin L. Steinberg
Hunton & Williams LLP
1111 Brickell Ave., Ste 2500
Miami, FL 33131


Attorneys for  defendants
Dole Food Company Inc and
Dole Fresh Fruit Company


Tefft W. Smith
Kirkland & Ellis LLp
655 Fifteenth St., NW
Washington, DC 20005

Lawrence P. Bemis
Kirkland & Ellis LLP
777 S. Figueroa St.
Los Angeles, CA 90017

Attorneys for defendants

Chiquita Brands International Inc
Chiquita Fresh North America LLC

Paul Schwiep
Susan Mortesen
Burlington, Wein, Schweip, Kaplan & Blorsey
2699 South Bayshore Drive, Penthouse A
Miami, FL 33131


Attorneys for  defendants
Chiquita Brands International Inc
ChiquitaFresh North America LLC

15—1

Mr James Robert Bryan
Mr Damien J. Marshall
Mr. Stuart H. Singer✓
Boies, Schiller & Flexner LLP
401 E. Las Olas Blvd, Ste 1200
Ft Lauderdale, FL 33301


Mr Todd Thomas
Mr Paul B. Kunz✓
Mr Carlos M. Sires✓
Boies, Schiller & Flexner LLP
401 E. Las Olas Blvd, Ste 1200
Ft Lauderdale, FL 33301

Attorneys for defendants
Fresh Del Monte Produce Inc.
Del Monte Fresh Products Company


*****************************************************************


ATTORNEYS FOR PLAINTIFFS


Susan L. Dolin
9000 Sheridan St., Ste 93
Pembroke Pines, FL 33024


Krishna B. Narine
Law Office of Krishna B. Narine
7839 Montgomery Avenue
Elkins Park, PA 19027


Gordon Ball
Ball & Scott
550 Main Avenue, Ste 601
Knoxville, TN 37902

ATTORNEYS FOR PLAINTIFFS


Daniel Karon
Goldman, Scarlato & Karon, PC
55 Public Square, Ste 1500
Cleveland, OH 44113


Kenneth Vianle
Julie Prag Vianale
Vianale & Vianale LLP
2499 Glades Roadm Ste 112
Boca Raton, FL 33431


Issac L. Diel
Sharp McQueen PA
Financial Plaza
6900 College Blvd, Ste 285
Overland Park, KS 66211


Robert G. Pahlke
Dayle Wallien
Pahlke, Smith, Snyder, Petitt & Eubanks
1904  1st Avenue
PO Box 1201
Scottsbluff, NE 69363


James P. Bonner
Thomas J. Ciarlone
Shalov, Stone & Bonner LLP
485 Seventh Avenue, Ste 1000
New York, NY 10018


15-3

# EXHIBIT 2

```
                    UNITED STATES DISTRICT COURT

                    SOUTHERN DISTRICT OF FLORIDA

                          MIAMI DIVISION

JOE SOLO, ET AL.,          . Case Nos. 05-61335-CV-AJ
                           .            05-21962-CV-MC
            Plaintiffs,    . Miami, Florida
                           . November 16, 2007
            v.             . 9:14 a.m.
                           .
CHIQUITA BRANDS            .
INTERNATIONAL, INC.,       .
ET AL.,                    .
                           .
            Defendants.    .
 .  .  .  .  .  .  .  .  .  .  .  .  .  .  .


                          -   -   -   -   -


                Transcript of Fairness Hearing had

           before the Honorable Adalberto Jordan,

                United States District Judge.

                          -   -   -   -   -
```

```
Proceedings recorded by mechanical stenography, transcript
produced by computer.
```

```
        FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER

                     (305)523-5568
```

f49375c7-5e2f-4fc4-97b1-053b097cb60e

Page 2

APPEARANCES:
For the Plaintiffs: Kevin B. Love, Esq.
        Joshua A. Migdal, Esq.
        Hanzman, Criden & Love, P.A.
        7301 Southwest 57th Court, Suite 515
        South Miami, Florida 33143
        and
        Benjamin D. Brown, Esq.
        Cohen Milstein Hausfeld & Toll, PLLC
        1100 New York Avenue, N.W.
        Suite 500, West Tower
        Washington, DC 20005
        and
        Seth R. Gassman, Esq.
        Cohen Milstein Hausfeld & Toll, PLLC
        150 East 52nd Street
        Thirteenth Floor
        New York, New York 10022
        and
        Krishna B. Narine, Esq.
        Law Office of Krishna B. Narine
        2600 Philmont Avenue, Suite 324
        Huntingdon Valley, PA 19006

For the Defendants  Lawrence P. Bemis, Esq.
Chiquita:    Laura Denton, Paralegal
        Kirkland & Ellis, LLP
        777 South Figueroa Street
        Los Angeles, CA 90017
        and
        Tefft W. Smith, Esq.
        Kirkland & Ellis, LLP
        655 Fifteenth Street, N.W.
        Washington, DC 20005
        and
        Paul J. Schwiep, Esq.
        Coffey Burlington
        2699 South Bayshore Drive
        Miami, Florida 33133

Page 3

APPEARANCES (CONTINUED):
For the Defendants  Marty Steinberg, Esq.
Dole:        D. Bruce Hoffman, Esq.
        Hunton & Williams, LLP
        1900 K Street, N.W.
        Washington, DC 20006-1109
        and
        Christopher N. Johnson, Esq.
        Hunton & Williams, LLP
        Barclays Financial Center
        Suite 2500, 1111 Brickell Avenue
        Miami, Florida 33131-3136
For the Defendants  Carlos M. Sires, Esq.
Del Monte:       Paul Kunz, Esq.
        Boies, Schiller & Flexner, LLP
        401 East Las Olas Boulevard
        Suite 1200
        Ft. Lauderdale, Florida 33301-2211

Court Reporter:  Francine C. Salopek, RMR, CRR
        Official Court Reporter
        United States District Court
        301 North Miami Avenue, Room 804
        Miami, Florida 33128-7709
        (305)523-5568

Page 4

1       FRIDAY, NOVEMBER 16, 2007, 9:14 A.M.
2       THE COURT: Good morning. Please be seated.
3       MR. BEMIS: Good morning, your Honor.
4       THE COURT: This is the consolidated fairness
5   hearing for two cases. First Case Number 05-61335, Joe Solo,
6   et al., vs. Chiquita Brands International, Incorporated,
7   et al. And the second case is 05-21962, Brookshire Brothers,
8   Limited, et al., vs. Chiquita Brands International,
9   Incorporated, et al.
10      If I could please have appearances, starting with
11  counsel for plaintiffs in the two cases.
12      MR. LOVE: Good morning, your Honor. Kevin Love
13  from Hanzman, Criden & Love in Miami on behalf of the direct
14  plaintiffs. I'd like to introduce Ben Brown from Cohen,
15  Milstein in D.C. He'll be speaking on behalf of the directs
16  this morning.
17      MR. BROWN: Good morning, your Honor.
18      THE COURT: Good morning.
19      MR. LOVE: His partner, Seth Gassman, from Cohen,
20  Milstein in -- from New York.
21      MR. GASSMAN: Good morning, your Honor.
22      THE COURT: Good morning.
23      MR. LOVE: And on his side is Krishna Narine, who
24  represents the indirect plaintiffs.
25      MR. NARINE: Good morning, your Honor.

Page 5

1       THE COURT: Good morning.
2       Okay. On the defense side?
3       MR. BEMIS: Good morning, your Honor. Lawrence
4   Bemis, Kirkland & Ellis. Your Honor, on behalf of Chiquita
5   Brands International and Chiquita Fresh North America, my
6   partner, Tefft Smith, who's in the seats behind us, and an
7   associate from our office, Laura Denton, as well as myself.
8       On behalf of Dole Food Company and Dole Fresh Fruit
9   Company, Marty Steinberg, sitting here at counsel's table --
10      MR. STEINBERG: Good morning, your Honor.
11      MR. BEMIS: -- and Bruce Hoffman from Hunton &
12  Williams.
13      And on behalf of Fresh Del Monte Produce, Inc., and
14  Del Monte Fresh Produce Company, we have Carlos Sires and
15  Paul Kunz, your Honor.
16      MR. SIRES: Good morning, your Honor.
17      MR. BEMIS: Oh, and I forgot, Paul Schwiep from
18  Coffey, Burlington is also here on behalf of Chiquita, your
19  Honor.
20      THE COURT: Good morning to all of you.
21      The first thing I want to ask all of you is whether
22  or not you have received any notifications, since the time
23  that you filed all of the papers, about any other potential
24  class members opting out, objecting, or having anything else
25  to say with regards to the proposed settlements?

f49375c7-5e2f-4fc4-97b1-053b097cb60e

Page 6

1    MR. BROWN:  Your Honor, on behalf of the direct
2  plaintiffs, we're in regular contact with the claims
3  administrator here, and we have heard nothing from anybody
4  else.
5    THE COURT:  Mr. Narine, how about on the indirect
6  side?
7    MR. NARINE:  We've received no further notices,
8  other than what we filed.
9    THE COURT:  All right.  Thank you.
10    Mr. Bemis?
11    MR. BEMIS:  On behalf of the defendants,
12  your Honor, I personally reviewed again all of the objections
13  against the notice of objections and opt-outs, and we have
14  nothing new that we can report.
15    THE COURT:  Every once in a while things trickle in
16  even though they're after the date, so I ask just to make
17  sure.
18    All right.  I have some questions -- I don't have
19  any real big issues with the settlements, but I have some
20  questions for you.
21    Let me just ask if there's anyone in the courtroom
22  who maybe hasn't filed anything, but has chosen to appear at
23  the fairness hearing to say something in support of or an
24  objection to the proposed settlements?  Anyone out there?
25    (No response.)

Page 7

1    THE COURT:  No?
2    So, like I said, I don't have any real big issues
3  with final approval of the settlements.  And after we
4  preliminarily approved the proposed settlement agreements, we
5  did some research to look into the type of settlement that
6  had been proposed in the indirect purchaser case, and there
7  is enough case law and authority out there approving that
8  sort of settlement so that I'm comfortable with it, even
9  though I don't think it's technically a cy pres settlement.
10  It differs in some significant ways from those sorts of
11  settlements.  But nevertheless, I'm comfortable enough to
12  approve it, given that there have been no objections.
13    Let me talk about attorneys' fees, which is a
14  matter near and dear to all of your hearts.
15    I understand that, for example, on the direct
16  purchaser case, that the attorneys are getting a pool of
17  money, if it is approved, to then be distributed, and that
18  the amounts that have been charged and shown in filings are
19  not necessarily what are going to be compensated dollar for
20  dollar or hour for hour.  Nevertheless, I have some
21  questions.
22    There are these things called "assessment
23  payments."  I'd like to know what those are.
24    MR. BROWN:  Yes, your Honor.
25    Assessment payments are essentially an advance on

Page 8

1  litigation costs.  When a leadership structure is put
2  together on the plaintiffs' side for a large and complex
3  litigation like this, the lead counsel will determine how
4  much money we need to have in the litigation fund in order to
5  pay experts, travel costs, deposition costs, et cetera, and
6  then determine, based on a series of things, including how
7  much commitment and how many resources the firms have on the
8  plaintiffs' side, how much money would be assessed to them to
9  put into a litigation fund.  And then as expenses come due,
10  they're paid out of the litigation fund.  Firms don't
11  always -- not all expenses go through the litigation fund,
12  but most do, and there's really no science necessarily to it.
13    At the end of the day, when a settlement is
14  reached, as we're putting forth our affidavits in support of
15  our expenses -- in this case what we had was a -- there's a
16  balance in the litigation fund.  But there are more
17  outstanding bills.  In other words, our -- sorry, I'm being
18  very inarticulate this morning.  The expert in this case is
19  owed about $250,000 currently, and there's about a hundred
20  thousand dollars left in the litigation fund.  And so, the
21  expenses that we'll receive, if your Honor grants our order,
22  will go first to pay any outstanding bills, and then to
23  reimburse every firm who along the way has incurred any
24  expenses, whether in the nature of assessments or otherwise.
25  But there won't be any -- it's not as though we're asking for

Page 9

1  reimbursement for the assessment and then the underlying
2  expense, as well, which would be double-billing as it were.
3    THE COURT:  Well, the reason I ask is because at
4  least some of the billing information that I've received --
5  and if I'm wrong, you can just correct me -- for example,
6  there's a firm called Barrack, Rodos & Bacine.  Their
7  expenses are over -- just over $80,000, but those include
8  $60,000 put in the escrow account.
9    MR. BROWN:  That's correct, yes.
10    THE COURT:  That's not being billed as an
11  assessment.  I'm concerned that I'm missing something.
12    MR. BROWN:  No, that money is held in escrow.  So,
13  that is -- that -- that's just, I think, that they weren't
14  using the same terminology as the other firms.
15    THE COURT:  I know.  That's why I'm concerned.
16    MR. BROWN:  I see.
17    THE COURT:  You understand?  I want to make sure
18  that I know what it is you're all talking about.  And I
19  thought that special assessments might be something like
20  advances --
21    MR. BROWN:  That's correct.
22    THE COURT:  -- to fund litigation.  But then I
23  started seeing some billing records which indicated monies
24  put into escrow accounts, which are sometimes used to fund
25  litigation and for advance payment of expenses on some sort

3 (Pages 6 to 9)

Page 10

1  of pro rata distribution basis. And so, I'm not sure that I
2  understand exactly how everyone has been talking --
3      MR. BROWN: Okay.
4      THE COURT: -- in submitting their papers here.
5      MR. BROWN: I understand.
6      When we received expense reports from all the firms
7  that did work in this case, we checked their records against
8  the litigation fund records, which our firm was charged with
9  keeping, and we confirmed that everybody who said that they
10 paid money into the litigation fund, at whatever rate their
11 assessments were, we confirmed that that was, in fact, the
12 amount that was assessed the litigation fund. And since
13 there has been -- in different cases sometimes they've used
14 different terminology. They may just refer generally to
15 escrow fund, rather than litigation fund. We knew what they
16 were talking about, and we just -- I guess -- we should have
17 gone back and told them to resubmit this and call it the
18 litigation funds so there was no confusion for the Court.
19 I'm sorry we didn't do that.
20     THE COURT: So, these expenses put in by this firm,
21 which I'm just using as an example, are the same type of
22 things --
23     MR. BROWN: That's correct, yes.
24     THE COURT: -- as the assessments.
25     MR. BROWN: Yes.

Page 11

1      THE COURT: They're just using different
2  terminology.
3      MR. BROWN: That's correct.
4      THE COURT: Is there agreement amongst all of the
5  class counsel as to distribution of the attorneys' fees
6  component?
7      MR. BROWN: Well, we haven't made any final
8  determinations. As sole class counsel, we reserve the right,
9  with all the plaintiff firms involved in this case, to make
10 the final determinations.
11     We have tentatively, at least, informed everybody
12 that we intend to, in this case, distribute attorneys' fees
13 on basically a pro rata basis, without any multipliers or
14 different percentages applied to different people's lodestar,
15 and we've heard no objections.
16     THE COURT: Okay.
17     MR. BROWN: We've heard a couple requests that
18 people get more than the percentage that other firms have
19 gotten, but --
20     THE COURT: Really? I'm just joking.
21     (Laughter.)
22     THE COURT: Let me just say, if there are issues
23 with regards to distributions later on, obviously I'll retain
24 jurisdiction to resolve them.
25     MR. BROWN: Yes, your Honor.

Page 12

1      THE COURT: But let me just put you all on notice
2  right now that some of the hourly fees that I've seen here
3  are not hourly fees that I would allow. So, if it comes to
4  that, you better be ready to justify them.
5      MR. BROWN: Yes, your Honor.
6      THE COURT: Okay? So, when I see fees, you know,
7  getting over $700 an hour, then you better be God's gift to
8  the legal profession. So, if there are any problems about
9  distribution of the total amounts, and you're all fighting
10 about what you're worth on an hourly basis, then you better
11 be ready to come in here and justify fees on that sort of a
12 scale. I'm just letting you know. I don't have to approve
13 those right now, because you're getting a lump sum.
14     MR. BROWN: Yes, your Honor.
15     THE COURT: And I'm not awarding you a lodestar or
16 an hourly rate and hours given. I'm just telling you, tell
17 the rest of your counsel that if that dispute ever comes to
18 me, and people are fighting over those sorts of hours -- I'm
19 not talking about the other hourly rates, but if there are
20 people who are seeking 700, 750 an hour, be ready.
21     MR. BROWN: Yes, your Honor.
22     THE COURT: Be ready. Okay?
23     I think those are all the questions I had with
24 regards to Brookshire.
25     MR. BROWN: Thank you, your Honor.

Page 13

1      THE COURT: So, I have some questions with regards
2  to Solo.
3      Mr. Narine, you're on the hot seat.
4      MR. NARINE: Yes, sir.
5      THE COURT: Some of the -- this is a small amount,
6  but, again, I want to make sure I understand exactly what's
7  going on.
8      There is a sum of other costs totalling
9  approximately $30,000. What is that?
10     MR. NARINE: I believe --
11     THE COURT: What are "other costs"?
12     MR. NARINE: I believe that was the notice costs,
13 your Honor.
14     THE COURT: And why didn't you just tell me that?
15     MR. NARINE: Ah, I guess we --
16     THE COURT: It would be very simple. When you say
17 something as general as "other costs," that just throws bells
18 off in my head about not knowing what in the world that is.
19     So, these are all costs related to the
20 distribution/preparation of the notice to class members.
21     MR. NARINE: And paying the claims administrator.
22     THE COURT: Right. For doing that.
23     MR. NARINE: Yes, sir.
24     THE COURT: And receiving communications and the
25 like.

1      Now, where are the incentive awards for the class
2  representatives coming from? I know they're a small amount,
3  but where are those coming from? From your fees?
4      MR. NARINE: No, sir. I believe in the settlement
5  agreement, we contemplated taking those from the $75,000 set
6  aside for expenses.
7      THE COURT: Okay.
8      All right. Let me ask you the same question that I
9  asked Mr. Love (sic). Have you come to an agreement with
10  regards to distribution of the attorneys' fees once they're
11  awarded in lump sum?
12      MR. NARINE: Our plan at this point is to pay
13  everyone a pro rata share of their lodestar, based strictly
14  on -- I guess the percentage is 60 percent, in other words,
15  the fees are 60 percent of the lodestar, and everyone will
16  receive 60 percent of their lodestar.
17      THE COURT: Okay.
18      All right. Again, I'll retain jurisdiction to
19  resolve any disputes among plaintiffs' counsel with regards
20  to distribution of the amounts, but I haven't gotten the same
21  sort of detailed records that I got on the other case from
22  the lawyers on your case. And you say you didn't do it for
23  strategic reasons, because you didn't want to give anybody a
24  strategic advantage of looking at your billing rates or what
25  work you had done or the like. But if there's a dispute, I'm

1  going to require all of you to file all of those records.
2      MR. NARINE: Understood.
3      THE COURT: And they'll be in the public record if
4  that happens, because I'm not doing it under seal.
5      MR. NARINE: Okay.
6      THE COURT: Okay?
7      MR. NARINE: Yes, sir.
8      Any further questions?
9      THE COURT: No, that's it. That is it.
10      Those are the questions I had. If anyone else
11  wants to say anything else or bring anything else to my
12  attention, I'm happy to hear you.
13      MR. LOVE: Your Honor, each side is prepared to
14  give a brief presentation, a little summary of the
15  settlement, but we know your Honor's read all the papers. If
16  you don't believe it's necessary, then we'll sit down, and we
17  really don't have anything else.
18      THE COURT: If you want to earn your fee and do
19  that, go ahead. I have time.
20      MR. LOVE: No, we don't think it's necessary, your
21  Honor.
22      THE COURT: I mean I preliminarily approved the
23  settlements. These final settlements are essentially the
24  same as they were, except for the fees and the costs. And
25  I've done independent research, especially on the indirect

1  case, to make sure that the settlement agreement was
2  something that was not out of the norm or out of the
3  ordinary, because it's not something you normally see. And
4  I'm satisfied that I should approve these.
5      And like I said, I had some questions about some
6  attorneys' fees and cost issues, but I think you've answered
7  those questions.
8      Mr. Bemis, anything else on the defendants' side?
9      MR. BEMIS: No, your Honor. The only comment I
10  would make is although your Honor said there weren't any
11  objections filed, there are in the notices. There were, I
12  think, three pro se documents that got filed that could have
13  been treated either as a notice or an objection, and I just
14  state that for the record. I'm sure your Honor has looked at
15  them, as we have.
16      THE COURT: The way I looked at them -- and if
17  we're talking about the same ones, I treat them as opt-outs.
18      MR. BEMIS: And, indeed, the one -- I think one of
19  them, which was Mr. Silva (sic), has clearly said he was
20  opting out, and then he filed some other paper, and it's a
21  little bit confusing. But I think he would be considered an
22  opt-out.
23      THE COURT: Let me just make sure we're on the same
24  page, then. Why don't you all tell me -- let's do them
25  separately.

1      Let's start with Brookshire. So, tell me what --
2  and I'll go back and double-check the court records to make
3  sure we haven't missed anything. So, on Brookshire, tell me
4  what opt-outs you have listed. I know you submitted a list,
5  but I want to make sure that list is current.
6      MR. BROWN: Your Honor, it is identical to the list
7  that we submitted to the Court, and it is three companies:
8  Daggett Truck Line, Incorporated --
9      THE COURT: Hold on. I'm writing them down as you
10  say them.
11      Daggett Truck Lines?
12      MR. BROWN: Correct.
13      THE COURT: Incorporated. Okay.
14      MR. BROWN: Costco Wholesale Corporation.
15      THE COURT: Okay.
16      MR. BROWN: And G.E. Forten Transport,
17  Incorporated (phonetic).
18      THE COURT: G.E. Forten, I'm sorry?
19      MR. BROWN: Transport, Incorporated.
20      THE COURT: Your records are the same, Mr. Bemis,
21  with regard to those?
22      MR. BEMIS: Yes, on the directs, yes, your Honor.
23      THE COURT: Okay.
24      All right. Then let's go to Solo, then.
25      Mr. Narine.

Page 18

1      MR. NARINE: The opt-outs we have are Mr. Robert
2  Goode --
3      THE COURT: Hold on one second.
4      MR. NARINE: Mr. Owen Silvious, and Mr. Charles
5  Brown. And we also have the notices that were filed by
6  Mr. Mason James, and one notice that was filed on behalf of
7  two individuals -- Tommy Elders and Mattie Carroll.
8      THE COURT: I don't remember seeing the one for
9  Mr. James. What was that about?
10     MR. NARINE: Mr. James filed a handwritten document
11 saying that he didn't like the settlement, essentially. I
12 believe -- I may even have a copy here with me.
13     THE COURT: If you just give me -- if you have the
14 docket entry number.
15     MR. BEMIS: I do, your Honor.
16     THE COURT: Mr. Bemis.
17     MR. BEMIS: It's 103, your Honor, and I have a copy
18 if you'd like to look at it now, but I do have it.
19     THE COURT: No, that's okay. We'll find them.
20     MR. BEMIS: It's 103.
21     THE COURT: And Mr. Elders and Mr. Carroll, or
22 Ms. Carroll?
23     MR. NARINE: Ms. Carroll, yes.
24     MR. BEMIS: Would your Honor like the docket
25 entries for those?

Page 19

1      THE COURT: If you have it, that would be great.
2      MR. BEMIS: I do, your Honor.
3  Tommy Elders' docket entries, they're 99 and 106.
4      THE COURT: Okay.
5      MR. BEMIS: And the Mason ones, if your Honor would
6  like those, are -- there's three of them -- 103, 110, and
7  111.
8      THE COURT: Who is that one for, I'm sorry?
9      MR. BEMIS: That was Mason P. James.
10     THE COURT: Mason James, okay.
11     MR. BEMIS: And the only other one -- there was one
12 other one -- I don't know if it was mentioned -- was
13 Silvious --
14     MR. NARINE: Silvious, yes.
15     MR. BEMIS: -- which is docket entries 101 and
16 104-1.
17     THE COURT: I mean I -- my clerk and I were looking
18 at them as they were sent in here, although they should have
19 been sent to the claims administrator, but we looked at them
20 as they came in, and I don't recall instinctively reacting to
21 any of them as objections, but rather opt-outs. But if
22 anybody thinks that they're any different, then tell me.
23     (No response.)
24     MR. BEMIS: Well, I think, your Honor -- Larry
25 Bemis again on behalf of the defendants. I think your Honor,

Page 20

1  if I'm correct, actually did enter an order with regard to
2  Silvious, and I think it's docket entry 101, where you
3  treated his objection -- initially he opted out, and you said
4  he couldn't opt out and object. And then it's a little
5  confusing how it was going to be treated after that fact.
6      THE COURT: Okay.
7      MR. BEMIS: And then he filed, as you may recall, a
8  settlement demand on the defendants. He would withdraw his
9  objection or his opt-out if we paid him some money and what
10 have you, and we filed those notices with the Court. I
11 believe we sent him copies of some of the papers in the case.
12 And so, we've heard nothing further from him.
13     THE COURT: All right. I'll take a look at those
14 two just to make sure, and address them, of course, if need
15 be.
16     The last thing I need from you, if you have it --
17 and if you don't have it right now, I'll get it from you
18 sometime later today -- if you have disks with regard to the
19 proposed orders?
20     MR. LOVE: Your Honor, I think I e-mailed it to
21 chambers.
22     THE COURT: Do you have it, Brenda?
23     LAW CLERK: No.
24     MR. LOVE: Can I e-mail it to you when I get back
25 to the office?

Page 21

1      THE COURT: I would prefer a disk.
2      MR. LOVE: Okay.
3      THE COURT: Because I'm technologically challenged.
4  So, I would just prefer that you give it to me on a Word
5  Perfect disk.
6      MR. LOVE: Do you want it in Word Perfect? And do
7  you want it on a CD, or you want it on one of those little --
8      THE COURT: Those doesn't matter.
9      MR. LOVE: Okay.
10     THE COURT: Whatever format you want to give it to
11 me is fine. But I would prefer -- it's -- we've had issues
12 with the CM/ECF system, and then being able to sometimes
13 convert e-mail into Word Perfect or Word. It doesn't always
14 happen, but we sometimes have those processing issues. So,
15 I'd rather just get a disk, or a CD, and just plug it into
16 the computer, make any changes, and do it that way.
17     MR. LOVE: No problem, your Honor.
18     THE COURT: Okay?
19     I'll get this out to you next week. Thank you very
20 much.
21     (Proceedings concluded at 9:38 a.m.)
22              - - - - -
23
24
25

f49375c7-5e2f-4fc4-97b1-053b097cb60e

Page 22

1              C E R T I F I C A T E
2      I certify that the foregoing is a correct transcript from
3      the record of proceedings in the above-entitled matter.
4
5
       _____     _____
6      Francine C. Salopek, RMR, CRR        Date
       Official Court Reporter
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT 3

Owen F Silvious
225-22 Indian Hollow Road
Winchester, VA 22603

Ms Susan L. Dolin, Esq.                              November 28, 2007
9000 Sheridan Street, Suite 93
Pembroke Pines, FL 33024

and

ALL ATTORNEYS LISTED ON THE ATTACHED
LIST, BOTH PLAINTIFFS AND DEFENDANTS
IN THE CIVIL ACTION STATED BELOW.

RE:   Joe Solo, et el., v. Chiquita Brands International Inc, et el.,
      Civil Action No:  05-61335-JORDAN
      Southern District of Florida, Miami Division

SUBJECT:   NOTICE OF INTENT TO APPEAL THE FINAL ORDER APPROVING THE
           SETTLEMENT AGREEMENT DATED JUNE 26, 2007.

Dear Sir/Madam:

This letter is to inform all of you that I intend to appeal the Final
Order approving the Settlement Agreement dated June 26, 2007 and the
certification of the class in the states where you did not have a class
representative that purchased bananas and did not suffer an injury of
loss in the above matter.

Because the action is an Indirect Purchaser action allegedly under the
laws of forty six (46) states including the District of Columbia, I will
be challenging the certification of the class for those states wherin you
did not name a class representative that purchased bananas and suffered
an injury or loss under those forty (40 additional states. The Motion I
filed in the court on or about September 12, 2007 which you received a copy
was very clear.  Because this ia an action under Indirect Purchaser laws
of individual states, you should have named a Class Representative from
each of the jurisdictions that suffered an injury or loss. Case law is
very clear on this argument in both the Eleventh Circuit and the District
Courts. There must be a named Class Representaive for each class jurisdiction
in the Indirect Purchaser action.

All of you have made false representations to the court and to more than
200 million individuals in the 40 states.

I am sure the Eleventh Circuit will reverse the Final Order Certifying the
Class and the Settlement Agreement.  Once I file the Notice of Appeal,
the Settlement Agreement is put on hold because of paragraphs 12 and 26 of the
Settlement Agreement.  The Class Certification and the Settlement Agreement
cannot become final until after the Court of Appeals reaches a decision on
my arguments and I have both district court cases and Eleventh Circuit case
law that supports my position on the arguments.

MS. Dolin and Ms Narine, please make sure all the attorneys and law
firms listed on the attached list receive copies of this Notice of
Intent immediately after you receive the Notice so all of you can
decide if you want to accept this offer.

Ms Susan L. Dolin, Esq
November 28, 2007
Page Two

Because the appeal will cause all of you to expend additional fees and
expenses, I am willing tosettle this matter and withdraw the appeal once
it is filed in exchange that each of the listed andm named attorneys and
law firms pay Twenty Thousand  Dollars tax free to an organization or
person designated by me that will be used mostly to help indigent persons,
elderly persons and homeless persons. I am even condidering filing an
action under the RICO Act against all the attorneys because of the massive
fraud and misrepresentations that have committed against the courts and
more than 200 illlion individuals in the states mentioned in the Settlement
Agreement, plus you have also committed fraud against the defendants named
in the action. Ita amazing to me how attorneys have gotten away with
settlements where the class members never received any benefit from the
settlements whatsoever, especially for class members in states that authorize
statutory damages like Hawaii which allows statutory damages between $1,000.00
and $5,000.00 for the elderly, some other states allow statutory damages of
$250.00, $500.00 and $200.00. Your actions have denied the persons in those
states the benefit of the statutory damages.

If all of you want to settle this matter before expending additional monies
plus the bad publicity you will receive from the action from the appeal,
please let me know immediately. Some of you attorneys have made hundreds of
thousands of dollars from these illegal settlements by  snowballing the
judges and the alleged class members where the actions should  not have been
certified as class actions and named plaintiffs and class members have not
receive one cent from the settlements.

Again let me know immediately if you want to settle this matter without
going forward with my appeal that will cause a delay in the action until
the Eleventh Circuit decides the arguments and I have both district court
and Eleventh Circuit case law that support my arguments.

I look forward to receiving your immediate response to this letter if you
are interested, otherwise I will proceed. By the way the Supreme Court has
stated that an unnamed class member may appeal the settlement and the
certification order.

Sincerely,

Owen Silvious

Owen F Silvious
225-22 Indian Hollow Road
Winchester, VA 22603

ATTORNEYS INVOLVED IN THE ACTION

Susan L. Dolin, Esq
9000 Sheridan St.,  Suite 93
Pembroke Pines, FL 33024


Krishna B Narine, Esq.
Law Office of Krishna B. Narine, PC
7839 Montgomery Avenue
Elkins Park, PA 19027


Gordon Ball, Esq
Ball & Scott
550 Main Avenue, Suite 601
Knoxville, TN 37902

Issac L. Diel, Esq
Sharp McQueen P.A.
Financial Plaza
6900 College Blvd, Suite 285
Overland Park, KS 66211

Daniel K Karon, Esq
Golman Sccarloto & Karon PC
55 Public Square, Ste 1500
Cleveland, OH 44113

Tefft W. Smith, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, NW
Washington, DC 20005

Marty L. Steinberg, Esq
D. Bruce Hoffman, Esq
Hunton & Williams LLP
1111 Brickell Avenue, Ste 2500
Miami, FL 33131

Carlos M. Sires, Esq
Boies, Schiller & Flexner LLP
401 East Las Olas Blvd, Ste 1200
Ft Lauderdale, FL 33301

# EXHIBIT 4

February 21, 2008

Owen F Silvious
16497077 FCI-2 Butner
PO Box 1500
Butner, NC 27509

Mr. Stuart H Singer
Mr Paul Kunz
Boies, Schiller & Flexner LLP
401 E. Las Olas Blvd Ste 1200
Ft Lauderdale, FL 33301


Please give copies of this letter to the other attorney's involved
in this case.


Re:  Joe Solo, et el., v. Chiquita Brands International Inc., et .
     US Dist Court No:  05-61335
     US Court of Appeals No:  07-15894-D


On February 11, 2008 a copy of my proposed Brief was mailed
to your firm which you should have received by now.

I have not yet filed the Brief with the United States Court  of
Appeals for the Eleventh Circuit yet.  However, I will be filing
the Brief within the next 30 to 40 days.

Based on case law, I am sure that the Eleventh Circuit will vacate
or reverse the Final Order Approving the Settlement Agreement and
Class Certification, plus the Order Approving Attorney Fees and
Expenses. I quoted a large number of cases that support by two
arguments in the Brief. I am sure of my position on the two
Arguments and I am sure the Court of Appeals will vacate or reverse
the orders stated above.

The purpose of thios letter to each of you is to see if we can
maybe work out a solution to this case that is agreeable to
everyone.  The Attorney's in this action have screwed up, no question
about that. The Attorney's that filed the alleged class action
did not file the action to benefit any person other than themselves.
All they were interested in was the Attorney Fees, nothing else.
I can prove that based on previous and current class actions
they have been invloved in and are currently involved in.

I am willing to settle this matter and possibly dismiss the
appeal if we can reach an agreeable settlement. I am willing to
settle for the statutory damages stated in my brief. See pages
11, 12 and 13  of my Brief.

Please let me know immediately if the Attorneys are willing
to work out a settlement of  this case.  The Attorneys are the
ones that will be losing if the Court of Appeals vacates or reverses
the Orders and the Settlement Agreement in the above cases, plus
the attorneys could face a Class Action under the Racketeer and
Influence Corrupt Practices Act, 18 USC 1964(c) because of their
gross misrepresentations and fraud upon more than 100 million persons.

Sincerely,

Owen F Silvious

Note:  Please contact all the attorney's
       and see if they are willing to
       negotiate a settlement of this case.